DALY BANK AND TRUST COMPANY, RESPONDENT, *v.* GREAT FALLS STREET RAILWAY COMPANY ET AL., DEFENDANTS; L. HAMILTON, APPELLANT.

(No. 2,066.)

ʹ(Submitted March 18, 1905.  Decided April 4, 1905.)

*Statutory Construction—Railways of Commerce—Street Railroads.*

Railways of Commerce—Street Railroads—Statutory Construction.
　　1.　Section 707, fifth division, Compiled Statutes of 1887, providing that a judgment against any railway corporation for an injury to person or property, or for material furnished to, or work or labor done upon the property of such corporation, shall be a lien prior and superior to the lien of any mortgage or trust deed, being a part of the Act of March 3, 1887, which treats exclusively of railways of commerce, has no application to street railroads.

Statutory Construction—Intent of Legislature—Context—Object and Remedy.
　　2.　When the words of a statute are not explicit, the intention of the law-making body is to be collected from the context, from the occasion and necessity for it, from the mischief felt and the object and remedy in view.

Statutory Construction—Doubt—How Resolved.
　　3.　Where doubt arises as to the true meaning of a term as used in a statute, that doubt must be resolved not merely by its popular definition, but from the general legislation respecting the same subject matter, having in mind the evident purpose to be accomplished by the legislation.

*Appeal from District Court, Cascade County; John W. Tattan, Judge.*

ACTION by the Daly Bank and Trust Company of Butte against the Great Falls Street Railway Company and Lizzie

Hamilton. From a judgment for plaintiff, defendant Lizzie Hamilton appeals. Affirmed.

*Messrs. Toole & Bach,* for Appellant.

Chapter XXV, fifth division, Compiled Statutes of 1887, is entitled "Railroad Corporations," comprehending foreign and domestic, mercantile and street railway corporations. It is general, and any limitation placed upon sections 706 and 707, by the insertion of any word that would change the meaning of the language used, is not warranted and in violation of section 630, first division, Compiled Statutes, *supra,* When Chapter XXV limits its sections to railroads provided for in it, they so express the limitation. When the sections are intended to apply to all or "any railroad" corporation, the language is general and unrestricted. (*St. Louis & C.* v. *Donahoe,* 3 Mo. App. 550; *Katzenberger* v. *Lawo,* 90 Tenn. 235, 25 Am. St. Rep. 681, 16 S. W. 611; Endlich on Interpretation of Statutes, sec. 76; *Hesterville etc. Co.* v. *Philadelphia,* 89 Pa. St. 219.)

The language of the statute is, "any railway corporation." That a street railway, when incorporated, is a railway corporation, as much as a commercial corporation, whether propelled by steam or electricity, is without doubt. There is no ambiguity in the phrase and there ought not be any mistake in its interpretation. There can be no question of its technical sense, and its ordinary sense, that is not equally as applicable in the one case as the other. Besides, section 707, *supra,* is limited in its terms to injuries to passengers, and for material furnished and work and labor done, is equally applicable to any railroad corporation, and there can be no distinction made in those particulars between commercial or street railroads. The section makes none, but in express and emphatic terms makes it applicable to "any railway corporation," and no construction should be given it that would confine it to the one, to the exclusion of the other. Had the legislature attempted to exclude street railways and make section 707 ap-

plicable solely to commercial railways, it would have been invalid under the Act of Congress. (Comp. Stats., p. 32.)

"The word 'railroad,' in its broadest signification, includes a street railroad, although it extends over the streets of a single city and is located wholly within the limits of a single county." (*Bloxham* v. *Consumers' Electric Light etc. St. Ry. Co.,* 36 Fla. 519, 51 Am. St. Rep. 44, 18 South. 444; *Cheetham* v. *McConnell,* 178 Pa. St. 186, 35 Atl. 631.) The terms "railroad" and "railway" are used interchangeably. (*Commonwealth* v. *C. P. & R.,* 52 Pa. St. 518; *Hesterville etc. R. R. Co.* v. *Philadelphia,* 89 Pa. St. 219; *City of Pittsburg* v. *Passenger Ry. Co.,* 104 Pa. St. 533; *Borough of Milvale* v. *Evergreen Ry. Co.,* 131 Pa. St. 1, 18 Atl. 993; *Gyger* v. *Philadelphia etc. R. Co.,* 136 Pa. St. 96, 20 Atl. 399; *St. Louis Bolt etc. Co.* v. *Donahoe,* 3 Mo. App. 559; *Katzenberger* v. *Lawo,* 90 Tenn. 235, 25 Am. St. Rep. 681, 16 S. W. 611.)

For a clear and logical exposition of the construction which ought to be given to the words "railroad company," and such as, in our opinion, should be applied to them as used in section 707, *supra,* see *Lieberman* v. *Chicago etc. R. Co.,* 141 Ill. 140, 30 N. E. 544; also *Bishop* v. *North,* 11 Mees. & W. 418; *City of Chicago* v. *Evans,* 24 Ill. 52; *Clinton* v. *Railway Co.,* 37 Iowa, 61; *Oler* v. *Railroad Co.,* 41 Md. 583; *New York Cable Co.* v. *Mayor etc.,* 104 N. Y. 1, 10 N. E. 332; *Bulton* v. *Short Route etc. Transfer Co.,* 85 Ky. 640, 7 Am. St. Rep. 619, 4 S. W. 332.

A municipal corporation could not turn over its streets to an individual to be operated for merely private purposes. The franchise must be for public and not private purposes, or, at least, public considerations must enter into every valid grant of a right to appropriate a public street for railroad uses. (*City of San Antonio* v. *Rische* (1896), 38 S. W. 388; Elliott on Roads and Streets, 565.) But it is not an unusual thing for such corporations to include within the objects of their incorporation the construction and maintenance of a railroad, and where such is the case there would be no reason to exclude a mortgage given by such a railroad from the opera-

tion of section 707 requiring it to be filed with the Secretary of State (*County of Randolp* v. *August T. Post,* 93 U. S. 502, 23 L. Ed. 657); and we fail to discover any force in the point made by counsel that the place described in the Act of 1887 for filing mortgages, to wit, with the Secretary of State, shows that railways operated in a city exclusively were not in the legislative mind.

*Mr. W. T. Pigott,* for Respondent.

Section 707 does not apply to street railway corporations. Chapter XXV of the fifth division, Compiled Statutes of 1887, comprises all of an Act entitled "An Act to provide for the formation of railroad corporations in the territory of Montana," approved May 7, 1873, and all of an Act entitled "An Act in relation to railroad corporations," approved March 3, 1887. (Comp. St. 1887, pp. 807, 824.) Both Acts, and the entire chapter, are specially applicable to railroads of commerce and general traffic, and do not include or refer to street railways. Examination of the chapter of which this section is a part impels the conclusion that the legislative assembly, in using the term "railway corporation," did not intend to embrace within it a street railway corporation. The conclusion is fortified by a consideration of other statutes, and of the conditions prevailing in 1873 and 1887.

The contention that section 707 has application to street railway corporations, is not a new one. It has been advanced and vigorously urged in other cases. It was so urged in *Massachusetts Loan etc. Co.* v. *Hamilton,* 88 Fed. 588, 32 C. C. A. 46, in *Central Trust Co.* v. *Warren,* 121 Fed. 323, and in *Manhattan Trust Co.* v. *Railway Co.,* 68 Fed. 82. In each of these cases, the court held that street railway corporations are not within the provisions of the section. They are determinative of the sole ultimate question in the case at bar.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1891 the Great Falls Street Railway Company, a New

Jersey corporation, owning and operating a street railway system in Great Falls, Montana, executed a blanket mortgage or deed of trust to secure an issue of bonds in the aggregate amount of $500,000, to which the Massachusetts Loan and Trust Company was a party as trustee. Bonds to the amount of $150,000 were issued as of even date with the mortgage, and within two years thereafter other of such bonds in the further sum of $75,000 were issued, negotiated, and passed into the hands of third parties. Afterward the plaintiff, Daly Bank and Trust Company, was substituted as trustee in the place and stead of the Massachusetts Loan and Trust Company. On February 15, 1896, the defendant Lizzie Hamilton recovered a judgment against the Great Falls Street Railway Company for personal injuries received by her, and on February 12, 1903, that judgment was renewed. This action was commenced in September, 1903, to foreclose the mortgage or trust deed, and defendant Hamilton was made a party, it being alleged in the complaint that "the said defendant Lizzie Hamilton has, or asserts or pretends that she has, some interest in or lien upon the said real property of said railway company, which is inferior to the lien of the said first mortgage or deed of trust." The street railway company defaulted, and defendant Hamilton filed an answer wherein she pleaded the judgment recovered by her against the street railway company, and its renewal, and alleged that the lien of such judgment is prior and superior to the mortgage given by the railway company. The plaintiff thereupon filed a motion for judgment on the pleadings, and this motion was granted, and a decree of foreclosure entered adjudging plaintiff's mortgage to be a lien prior to the judgment lien of the defendant Hamilton, and directing a sale of the mortgaged property in accordance with the provisions of the mortgage or trust deed. From this decree the defendant Hamilton appealed.

Only one question is presented for our determination, namely: Does section 707, fifth division, Compiled Statutes of 1887, apply to street railway companies, so as to render the judgment recovered by defendant Hamilton in 1896 and re-

newed in 1903 a lien upon the railway company's property prior and superior to the mortgage given upon such property by the railway company in 1891? If it does not, the decree should be affirmed; if it does, the decree should be modified, so as to provide for the satisfaction of such prior claim.

Section 707, above, reads as follows: "A judgment against any railway corporation for any injury to person or property, or for material furnished, or work or labor done upon any of the property of such corporation, shall be a lien within the county where recovered on the property of such corporation, and such lien shall be prior and superior to the lien of any mortgage or trust deed provided for in this Act." If considered alone, this section might be deemed sufficiently broad in its terms to include street railway companies as well as the ordinary railways of commerce. But where doubt arises as to the true meaning of the term "railway corporation," as used in that section, the doubt must be resolved not merely by the popular definition of the term "railway," but from the general legislation respecting the same subject matter, having in mind the evident purpose to be accomplished by these enactments.

The legislation in force respecting the matter at the time of the execution of the mortgage involved in this case is comprised in Chapter XXXV (incorrectly printed XXV), fifth division, Compiled Statutes of 1887. Sections 677 to 701, inclusive, of that chapter are sections 1 to 24, inclusive, of an Act entitled "An Act to provide for the formation of railroad corporations in the territory of Montana," passed over the Governor's veto May 7, 1873 (Laws Ex. Sess. 1873, p. 93), and the most cursory examination of these sections at once discloses that none of their provisions were ever intended to apply to street railways. These sections were carried forward into the compilations of 1879 and 1887, and, in substance, are reproduced in the Civil Code of 1895 as sections 891 to 909, inclusive. The remaining sections of this chapter comprise sections 1 to 7, inclusive, of an Act of the Fifteenth Territorial Legislative Assembly entitled "An Act in relation to railroad

corporations," approved March 3, 1887; and, in order to arrive at the legislative intent in enacting section 6 of that Act, which is section 707, now under consideration, it is necessary that the entire Act be considered.

Section 1 (702) provides that any railroad corporation chartered by or organized under the laws of the United States or of any state or territory, whose line of railroad shall reach or intersect the boundary line of Montana, may extend its railroad into Montana from such point, and may build branches from such point or from such extension.

Section 2 (703) provides for the consolidation of any two or more railroad corporations whose respective lines are wholly or partly within the territory of Montana, when their respective lines or any branches so connect that they may be operated together as one property.

Section 3 (704) provides that any railroad corporation whose line is wholly or partly within the territory of Montana, or reaches the boundary line thereof, may lease or purchase the whole or any part of the railroad or line of railroad of any other railroad corporation, provided that such leased or purchased line is continuous of or connected with the line of the purchasing railroad.

Section 4 (705) authorizes any railroad corporation whose line is wholly or partly within the territory of Montana to issue and dispose of such amount and character of special, preferred, or full paid-up stock of the capital stock of such corporation as may be deemed advisable by its board of directors.

Section 5 (706) provides that any railroad corporation whose line is wholly or partly within the territory of Montana shall have authority and power to make, issue, negotiate and deliver its bonds or other evidences of indebtedness, and to secure the payment thereof by mortgage or deed of trust upon all or any part of its property; and provides for the recording of such mortgage in the office of the Secretary of the Territory.

Section 6 is section 707, and is quoted above, and section 7 (708) contains the repealing clause.

The seven sections of this Act herein paraphrased are carried into the compilation of 1887 as sections 702 to 708, inclusive, and include section 707, which is the subject of construction in this case.

If we were to hold that the term "railroad," used in section 707 of Chapter XXXV, above, applies to street railways because the term is sufficiently broad to include any and all graded roads on which rails of iron or steel are laid for wheels of cars to run upon, there is no apparent reason why the same term should not also be so construed wherever it is found in that chapter, and, if so, impossible conditions would be attached. For instance, under section 688 every street railway company would be required to build and complete at least fifteen miles upon each of its lines, branches, or extensions every year subsequent to the filing of its articles of incorporation, until the entire system was completed, under a penalty of a forfeiture of its charter and all rights and privileges conferred by that chapter. Under section 700 such street railway companies would be required to provide comfortable and convenient cars for the transportation of passengers, baggage, express matter, and freight, and to fit its locomotives with bells and steam whistles. Under section 701 every such corporation would be required to file with the territorial auditor a report showing, among a great many other things, the length of its main track, the length of its branches and sidings, the maximum grade of its line, the shortest radius of curvature, with the length of curves in its main road, the number of wooden trestles, the length of the road unfenced on either side, and the reason therefor, the number of its engines, the number of its express and baggage cars, the number of its freight-cars, and very many other things, the merest statement of which is a demonstration of the absurdity of attempting to make them applicable to street railways. The terms "rail-

road" and "railway," as used in this chapter XXXV, are synonymous terms, and are generally to be found employed interchangeably. (*State* v. *Brin,* 30 Minn. 522, 16 N. W. 406.)

Prior to 1895 we had no statute particularly designating the various purposes for which industrial corporations might be organized in this territory or state; but section 446 of Chapter XXV designated certain purposes, and then contained this provision: "carrying on any other branch of business designed to aid in the industrial or productive interests of the country and the development thereof." It is apparent, then, that the purpose of the Act of 1887, above referred to, was to admit lines of railroad into the territory of Montana, to permit the consolidation of certain lines of railroads and the leasing and purchasing of one road by another under certain conditions, all of which was evidently intended to encourage such industrial enterprises as might aid in the development of the territory, which at that time had but few lines of railway within it; and to that end sections 4 and 5 of that Act were adopted to permit such railroad corporations to issue and dispose of their capital stock, and to issue their bonds and secure the payment thereof by mortgages or deeds of trust upon their property, including the franchises, etc. And, having made these provisions, the legislature in its wisdom added section 6, which was carried into the compilation as section 707. When the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity, from the mischief felt, and the object and remedy in view. Having authorized such companies to issue their bonds and other evidences of indebtedness and to secure the payment of the same by mortgages upon their property, and the legislature having in mind, doubtless, the known habits of such corporations to begin their operations by borrowing money and securing the payment of it by such mortgages, it then doubtless considered the danger, present or that might possibly arise, whereby a person injured by such a corporation, or one who should do work or labor for it upon its property, would

be remediless when he sought to enforce collection of his claim, unless some provision was made whereby such claim, when litigated, might have preference over such mortgages or deeds of trust. This was evidently the purpose of the legislature; and the Act, if construed as a whole, makes one harmonious legislative enactment, all the provisions of which apply equally to one character of corporations, and no one provision of which can reasonably be segregated from the others and given a construction which would be out of harmony with the general purpose of the Act as a whole.

As further evidence of the legislative intent in enacting section 707, above, and as indicative of the legislative use of the word "railway," it is worthy of note that at the same session of the legislature there was passed an Act entitled "An Act relating to the formation of municipal corporations," approved March 10, 1887. This was a general municipal corporation Act, and comprised one hundred and twenty-six sections, which are to be found in the compilation of 1887 from sections 315 to 440, inclusive. That Act embraces section 325, which undertakes to enumerate certain powers which a city council was given by that Act. Subdivision 14 of this section provides that the city council has power "to regulate and control the laying of railroad tracks, and prohibit the use of engines and locomotives propelled by steam, or to regulate the speed thereof when used." Subdivision 15 authorizes the city council to require any railway, the cars of which are propelled by steam within a city or town, to light the same. Then subdivision 16 is as follows: "To license and authorize the construction and operation of street railroads and require them to conform to the grade of the streets as the same are or may be established." It is perfectly apparent, then, that the legislators, in using the terms "railroad" and "railway" in subdivisions 14 and 15, used the terms interchangeably, with reference entirely to the railways of commerce; and that when they desired to make any reference to street railroads they made use of the specific term "street rail-

roads." There is no reason, then, to suppose that in enacting section 707 those same legislators used the term "railway" in its technical sense, for it is perfectly apparent that in enacting subdivisions 14 and 15 of section 325 they used it with reference to its popular, and, we may say, generally accepted meaning.

In *Manhattan Trust Co.* v. *Sioux City Cable Ry. Co.,* 68 Fed. 82, the circuit court for the northern district of Iowa had under consideration section 2008, McClain's Code of Iowa, which provides that "a judgment against any railway corporation for any injury to any person or property, shall be a lien within the county where recovered on the property of such corporation, and such lien shall be prior and superior to the lien of any mortgage or trust deed executed since the 4th day of July, A. D. 1862." The precise question was there presented as is presented in the case at bar, and after a careful consideration of the authorities and the proper construction to be given to the legislative enactment under consideration it was held that the term "railway," as therein used, had no application whatever to a street railway. It is evident that the same argument was made before that court that was urged here—that certain of these sections, if construed apart from the others, are broad enough to include, and ought to be held to include, street railways. The court, however, disposes of that contention and the merits of the case in the following language: "The conclusions reached are that, as there is, in fact, a marked distinction between railroads used in the furtherance of the general passenger and freight traffic of the state and those used for street purposes only, we should naturally expect to find in the legislation of the state provisions applicable to the one class which are not applicable to the other; that an examination of the statutes of the state shows that such difference is recognized therein; that chapter 5, Title 10, McClain's Code, is intended to embrace the provisions applicable to companies engaged in the general passenger and freight traffic; that, as that is the general purpose of the chap-

ter, the court is not justified in excepting out of it one or two sections, and holding that they include also street railways, when the latter are not specifically named therein, and there is nothing in the context of the chapter or in the text of the original Act of 1862 which shows the legislative intent to include street railways therein; that the adoption of other sections of the statute, not included in said chapter 5, which authorize the construction and operation of street railways under the control of the city or town, with special provisions in regard to right of way, and liability for injuries caused to others, shows clearly that the legislature did not intend to include street railways within the provisions of chapter 5, title 10, and that the court cannot so include them."

In 1895 the supreme court of Minnesota, in *Funk* v. *St. Paul City Ry. Co.,* 61 Minn. 435, 52 Am. St. Rep. 608, 63 N. W. 1099, 29 L. R. A. 208, construed chapter 13, page 69, of the General Laws of 1887 of Minnesota, which, among other things, provides that every railroad corporation owning or operating a railroad in that state shall be liable for all damages sustained by any agent or servant thereof by reason of negligence of any other agent or servant, without contributory negligence, etc., and by a consideration of the other sections of the same act reached the conclusion that the provision above referred to has no application to street railways.

In 1898 practically this same case was before the circuit court of appeals. This appellant, Hamilton, having secured her judgment in the district court, went into the federal court in a suit in equity to enforce her judgment against the property of the Great Falls Street Railway Company, and sought to have the same established as a lien prior to the lien of mortgage or deed of trust now under consideration. The circuit court of appeals considered the provisions of section 707 as well as the other sections of Chapter XXXV, above, reviewed the authorities at great length, and reached the conclusion that section 707 has no application whatever to street railways.

(*Massachusetts Loan etc. Co.* v. *Hamilton,* 88 Fed. 588, 32 C. C. A. 46.)

In 1903 this same section 707 again came before the circuit court of appeals for consideration in the case of *Central Trust Co.* v. *Warren,* 121 Fed. 323, 58 C. C. A. 289. Warren secured a judgment for personal injuries sustained by him against the Helena Power and Light Company, upon which the Central Trust Company held a mortgage or deed of trust given prior to the date of Warren's judgment. In a suit in equity to foreclose that mortgage Warren was made a party defendant. He pleaded his judgment, and sought to have the lien of the judgment declared prior and superior to the lien of the mortgage, and Knowles, District Judge, so held, and entered a decree providing for the foreclosure of the mortgage, for a sale of the property thereunder, and for the satisfaction of Warren's judgment before anything was applied toward the satisfaction of the debt secured by the mortgage. On appeal to the circuit court of appeals this judgment was reversed, and it was again held that section 707 has no application to street railways.

While these adjudications by the federal courts are not controlling with us, on account of the high character of the courts they are persuasive, and the reasons given by them seem in this instance conclusive. As the proper construction of this section is the only question before us, we are of the opinion that it cannot be held to embrace street railways, and that the district court committed no error in rendering judgment upon the pleadings. The judgment is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.

Rehearing denied, May 3, 1905.