## HELENA LIGHT AND RAILWAY CO., APPELLANT, *v.* CITY OF HELENA, RESPONDENT.

(No. 3,194.)

(Submitted January 9, 1913. Decided February 13, 1913.)

[130 Pac. 446.]

*Municipal Corporations — Police Power — Street Railroads — Statutory Construction—Lighting of Tracks—Invalid Ordinance.*

Cities and Towns—Police Power—Extent and Exercise.
  1.  The extent of the police power of a municipality must be ascertained from the law creating it, and the laws of the state upon the subject; it cannot be surrendered, alienated, abridged or enlarged by contract, nor delegated, even though the legislature give its consent.

Same—Street Railroads—Regulation—Police Power—Statutory Construction—Lighting of Tracks.
  2.  *Held*, under the rule of statutory interpretation, applicable alike to an ordinance, that where general words follow particular and specific ones, the former must be construed to mean things of the same kind, that a provision in an ordinance granting a franchise to a street railway company reserving in the city the right to "adopt such other and further regulations, rules," *etc.*, as the council might see fit to impose, had reference to and included only regulations treated of and particularized in preceding sections, *viz.*, police regulations, and therefore did not embrace, in the absence of a specific agreement to that effect, the power to compel the company to light its tracks within the corporate limits without cost to the city—a matter not included within the purview of the term "police regulations."

Same—Powers—How to be Determined and When to be Denied.
  3.  A municipality has only such powers as are expressly conferred by the law creating it, and such as are necessarily implied and indispensable in order to accomplish the purpose of its creation; and when there is a fair and reasonable doubt as to the existence of the particular power, it must be resolved against the municipality and the power denied.

Same—Street Railroads—Lighting Tracks—Invalid Ordinance.
  4.  *Held*, that subdivision 12 of section 3259, Revised Codes, granting city or town councils power to compel "the lighting of any railroad track  *  *  *  within a city or town, the cars of which are propelled by steam or otherwise," *etc.*, at the expense of the owner, has no application to street railroads, and that, therefore, an ordinance requiring a street railway company to light its tracks within the corporate limits without expense to the city was void.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by the Helena Light and Railway Company against the city of Helena. Decree for defendant, and plaintiff appeals. Reversed and remanded.

*Messrs. Wm. Wallace, Jr., John G. Brown,* and *T. B. Weir,* for Appellant, submitted a brief and one in reply to that of Respondent; oral argument by *Messrs. Wallace* and *Brown.*

The intention of the legislature that only the steam railroads of commerce were meant to be covered by subdivision 12 of section 3259, Revised Codes, is clearly shown. The use of the term "street railroads" in the succeeding subsections 13 and 66 clearly shows that the legislators recognized the classes of railroads, and when they wanted laws to apply to them, used such words so as to put it beyond question. The intention of the legislature to exclude street railroads is also shown by the later Act of 1911, Chapter 98, which specifies that street railroads shall only pay a part of such cost of lighting. The object sought to be obtained shows it was not their intention to require the lighting of the way of a comparatively slow moving vehicle which has the means of and is expected to stop in short distance and upon sudden notice. No one can with reason claim this section of the Act to be a grant of power to compel either a steam or street railway to light city streets, and that is what is here sought to be accomplished. "But it is clear that, under the guise of protecting citizens from passing trains at public crossings, the city cannot enter into a general system of street lighting at every point where a railroad track crosses a public street." (*City of Shelbyville* v. *Cleveland etc. Ry. Co.,* 146 Ind. 66, 44 N. E. 929.)

The foregoing case is expressly affirmed and the city censured for attempting to create a lighting district under the guise of protecting its citizens, in *Cleveland etc. Ry.* v. *City of Connersville,* 147 Ind. 277, 62 Am. St. Rep. 418, 37 L. R. A. 175, 46 N. E. 579. At most it is only to compel the lighting of a track for the protection of such citizens as may be compelled to use or cross it. This being true, the intention of the legislature is

clear that what is aimed at is protection against steam railroads, heavy trains of cars or engines that are not expected to, and for practical purposes cannot, stop at every corner if necessary. (*Atlantic etc. Ry.* v. *State*, 135 Ga. 545, 69 S. E. 725; *State* v. *Hamilton*, 33 Nev. 418, 111 Pac. 1026.)

Again, a reading of section 12 as it was put into the Codes shows by the latter part of the section that the railroads of commerce were the ones it deals with. It speaks of power "to require the construction of crossings  *  *  * where said track intersects or crosses any street, alley or public highway, fix and determine · *  *  * the grade thereof, *etc.*" Surely a street railway was not contemplated as intersecting streets. Nor do we believe they meant here to require certain kinds of crossings when in the very next section they require street railroads to conform to grade. A construction such as the lower court gave to section 12 makes it and section 13 absurdities, and no Act is ever construed to produce absurdities. (*Dekelt* v. *People,* 44 Colo. 525, 99 Pac. 330; *In re King,* 105 Iowa, 320, 75 N. W. 187; *St. Louis etc. Ry.* v. *Batesville,* 86 Ark. 300, 110 S. W. 1047; *Curry* v. *Lehman,* 55 Fla. 847, 47 South. 18; *Advisory Board of Coal Creek etc.* v. *Levandowski* (Ind. App.), 84 N. E. 346; *Logan County* v. *Carnahan,* 66 Neb. 685, 92 N. W. 984, 95 N. W. 812; *In re Howard,* 80 Vt. 489, 68 Atl. 513.)

The commonly understood sense or meaning of the words "railroad" and "railway" furnishes us some criterion to go by in interpreting this Act. In *Daly Bank etc.* v. *Great Falls etc. Co.,* 32 Mont. 298, 80 Pac. 252, the very excellent rule is laid down that "where doubt arises as to the meaning of the term 'railway corporation' as used in that section, the doubt must be resolved not merely by the popular definition of the term 'railway' but from the general legislation respecting the subject matter, having in mind the evident purpose to be accomplished by these enactments."

The writer investigated through various street railways the question of whether or not there was any statute similar to the one here under discussion in any state. While we failed to find

in any state a statute like it, we did find a statute in Ohio (Gen. Code, sec. 3762), giving cities the power to require a bridge or railway located in whole or in part in such corporation (municipal) or any portion thereof to be lighted. The statute has been interpreted to include interurban railways, the opinion, however, clearly distinguishing them from street railways, the court saying: "Interurban railways, by analogy of statutes regulating the nature of business conducted, and mode of operation now belong to the class railroads, rather than that of street railways." (*Ottawa* v. *Ohio Elec. Ry. Co.,* 13 Ohio C. C., n. s., 561.)

Montana statutes upon the subject of railways have been construed by the United States court of appeals in a very well-considered case, valuable also for the very full citations in it. In this connection we would call attention to the fact that the decision referred to announces the rule that the character of the use and not the motive power is the test. It is said by that court: "We have no power to insert 'street railways' into this section of the Act, with the knowledge we have that all the other provisions of the Act refer in clear, plain and unequivocal terms to other kinds of railways or railroads. Especially is this true when we find Acts passed at the same session where the word 'street' is used as a prefix to the word 'railway' or 'railroads' in all Acts intended to apply to street railroads." (*Massachusetts Trust Co.* v. *Hamilton,* 88 Fed. 591, 32 C. C. A. 46.) This decision is cited and to all practical purposes affirmed in *Central Trust Co.* v. *Warren,* 121 Fed. 323, 58 C. C. A. 289. While it is true that the general rule is that the interpretation or meaning of the word "railroad" is to be determined from the general legislation and intention of the legislature, there are some authorities which may prove of assistance. General statutes as to railroads or railways have been held as not applying to street railways in the following instances: Eminent domain. (*Thompson etc. Co.* v. *Simon,* 20 Or. 60, 23 Am. St. Rep. 86, 10 L. R. A. 251, 25 Pac. 147; *Murray etc. Co.* v. *Milwaukee etc. Co.,* 110 Wis. 555, 86 N. W. 199; *Galveston etc. Ry.* v. *Houston Electric*

*Ry. Co.,* 57 Tex. Civ. App. 170, 122 S. W. 287.) Stopping trains when crossing "railroads." (*Byrne* v. *Kansas City etc. Ry.,* 61 Fed. 605, 24 L. R. A. 693.) An ordinance as to trains and engines. (*Hill* v. *Rome etc. Co.,* 99 Ga. 103, 28 S. E. 631.) Lien of a judgment on railroad property. (*Fidelity etc. Co.* v. *Douglas,* 104 Iowa, 532, 73 N. W. 1039; *Manhattan Trust Co.* v. *Sioux City Cable R. Co.,* 68 Fed. 82.) Constitutional provision as to taxes. (*San Francisco etc. R. Co.* v. *Scott,* 142 Cal. 222, 75 Pac. 575; *City of Newark* v. *Merchants' Ins. Co.,* 55 N. J. L. 145, 26 Atl. 137.) Statute as to responsibility for accidents. (*Lincoln etc. Ry.* v. *McClellan,* 54 Neb. 672, 69 Am. St. Rep. 736, 74 N. W. 1074.) Statute of limitation of railroad suits. ·(*North Hudson County Ry.* v. *Flanagan,* 57 N. J. L. 236, 30 Atl. 476.) Fellow-servant laws. (*Riley* v. *Galveston City Ry. Co.,* 13 Tex. Civ. App. 247, 35 S. W. 826; *Funk* v. *St. Paul etc. Ry.,* 61 Minn. 435, 52 Am. St. Rep. 608, 29 L. R. A. 208, 63 N. W. 1099; *Sams* v. *St. Louis etc. Co.,* 174 Mo. 53, 61 L. R. A. 475, 73 S. W. 686.) Provisions as to penalties as to excess fares. (*Moneypenny* v. *Sixth Ave. R. R. Co.,* 4 Abb. Pr., n. s., 357.) Laborer's lien. (*Front St. Cable Ry. Co.* v. *Johnson,* 2 Wash. 112, 11 L. R. A. 693, 25 Pac. 1084; *Manhattan Trust Co.* v. *Sioux City Cable Co.,* 68 Fed. 82; *Massillon etc. Co.* v. *Cambria Iron Co.,* 59 Ohio St. 179, 52 N. E. 192.) Provision as to occupying street crossings. (*Howard* v. *Union etc. Co.,* 156 Mass. 159, 30 N. E. 479.) Railway Commission Acts. (*Board of Railroad Commrs.* v. *Market St. Ry. Co.,* 132 Cal. 677, 64 Pac. 1065; *Kansas City etc. Co.* v. *Board,* 73 Kan. 168, 84 Pac. 755.) Forbidding consolidations. (*Scott* v. *Farmers' etc. Bank,* 97 Tex. 31, 104 Am. St. Rep. 835, 75 S. W. 7; *Appeal of Montgomery,* 136 Pa. 96, 9 L. R. A. 369, 20 Atl. 399.) Statute exempting from stock subscription liability. (*Ferguson* v. *Sherman,* 116 Cal. 169, 37 L. R. A. 622, 47 Pac. 1023.) It has also been held that the term "railroad," without any qualifying prefix, applies to the steam railroads of commerce only. (*State* v. *Duluth etc. Ry. Co.,* 76 Minn. 96, 57 L. R. A. 63, 78 N. W. 1032.) That a street railway grant does not authorize a steam road to occupy streets

is held in a very well-considered case by Judge Baldwin, dealing fully with this subject. (*Canastota Knife Co.* v. *Newington etc. Co.*, 69 Conn. 146, 36 Atl. 1107.)

If we adopt the far-fetched construction that section 12 applies to street railroads, it is repealed by section 4 of Chapter 98 of the Laws of 1911, which expressly provides that lighting districts may be created, and in the event a street railway is within the district, it may be charged "for such part of the entire cost and expense of such installation and maintenance, not exceeding one-sixth thereof, as the city council may determine." This Act cannot be construed otherwise than as an express repeal of the construction here sought to be given to subsection 12, *supra,* and its preceding enactments of 1895, 1893 and 1887. (*State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308; *Dennis* v. *Moses,* 18 Wash. 537, 40 L. R. A. 302, 52 Pac. 333; *People* v. *Dobbins,* 73 Cal. 257, 14 Pac. 860; *Wellsburg etc. R. Co.* v. *Panhandle Traction Co.,* 56 W. Va. 18, 48 S. E. 746; *Rodgers* v. *United States,* 185 U. S. 83, 46 L. Ed. 816, 22 Sup. Ct. Rep. 582; *Joseph Speidel Grocery Co.* v. *Warder,* 56 W. Va. 602, 49 S. E. 534.) It is a well-settled rule that where general terms in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect. (36 Cyc. 1130, notes, 68, 69.)

*Mr. H. S. Hepner,* and *Mr. Edward Horsky,* for Respondent, submitted a brief and one in answer to Appellant; *Mr. Horsky* argued the cause orally.

Apart from subdivision 12, the city has the police power conferred in its "general welfare clause" in subdivision 1 of section 3259. (*City of Helena* v. *Kent,* 32 Mont. 279, 4 Ann. Cas. 235, 80 Pac. 258, and cases there cited.) The requirement for lighting tracks is essentially a police regulation. (*Village of St. Mary* v. *Lake Erie etc. Co.,* 60 Ohio St. 136, 53 N. E. 795.) The right to exercise the police power cannot be surrendered, alienated or abridged, either by the legislature or municipality, by any grant, contract or delegation. Whatever is necessary

to preserve and promote the health, safety, convenience and comfort of the public, must be regarded as reserved. (3 McQuillin on Municipal Corporations, sec. 953, p. 2086 *et seq.*, and cases cited; 1 McQuillin on Municipal Corporations, sec. 382, p. 842; 3 Dillon on Municipal Corporations, 2060, and cases cited; *Northern Pac. Ry. Co.* v. *Duluth,* 208 U. S. 583, 52 L. Ed. 630, 28 Sup. Ct. Rep. 341.) Hence when a franchise or privilege is granted to use the city street for a public service, the grantee accepts the right upon the implied condition that it shall be held subject to the reasonable and necessary exercise of the police power of the state, operating either through legislative enactment or municipal action. (3 Dillon on Municipal Corporations, 2060, and cases cited.) "Thus the legislature or the city acting under delegated authority may require a railroad company to light such portion of the railroad as is within the city limits." (*Pittsburg etc. R. Co.* v. *Hartford City,* 170 Ind. 674, 20 L. R. A., n. s., 461, 82 N. E. 787, 85 N. E. 362; *Cincinnati etc. R. Co.* v. *Sullivan,* 32 Ohio St. 152.) "A regulation which shows on its face that the end contemplated is the securing of reasonable safeguards against danger will ordinarily be presumed to be valid, and will not be interfered with on light grounds, or where the regulation can fairly be said to tend toward a safer condition." (36 Cyc. 1447.) "A regulation is not unreasonable or invalid from the mere fact that it will require a large outlay of money by the company." (*Id.,* citing *People* v. *Detroit United Ry.,* 134 Mich. 682, 104 Am. St. Rep. 626, 63 L. R. A. 746, 97 N. W. 36; *People* v. *Detroit Citizens' St. R. Co.,* 116 Mich. 132, 74 N. W. 520.) Regulation by cities must be reasonable under the police power. If the regulation is reasonable, it is operative, even if the cost is large. (36 Cyc. 1405.)

It is true, in general, that in ascertaining the meaning or sense in which given words, such as "railroad" or "railway," are used in a given statute, other portions of the same statute in which the same words are used may be resorted to for comparison to ascertain in what sense such term is used; that is,

in what connection, the context, and what is its intendment, in the light of the employment of the same words in the same piece of legislation. Thus, in the *Hamilton Case* referred to in the investigation of the phrase quoted, "railway corporation," the United States ninth circuit court of appeals held that as the term was employed in section 707 of the 5th Division of the Compiled Statutes of Montana of 1887, it referred only to the steam railroads of commerce; but this was clear in view of sections 702, 703, 704 and 706, in disclosing that the legislature had in mind only steam railroads of commerce, for the said section mentioned could only apply to such railroads of commerce, and not to street railroads. In the case at bar, however, the legislature of 1895 inserted the words "or otherwise," and again the legislature in 1897, to emphasize this intent, passed a new Act, employing the same language. The words so added make the statute self-definitive. Thereby subdivision 12 embraces every sort of a railroad, and removes any doubt that might have existed if such term had not been used. "The word 'railroad' has no such fixed definition as to determine, by its mere use in a statute, if it applies to street railways or not. It may be used in its broad sense to include street railroads or any other kind of railroad on which iron is laid for wheels to run on, whether propelled by steam, electricity, horsepower, or other power—or it may be used in a technical sense and not apply to street railroads." (*Massachusetts etc. Co.* v. *Hamilton,* 88 Fed. 588, 32 C. C. A. 46.) "The terms 'railroad' and 'railway' are synonymous, and are generally used interchangeably, unless it appears from the connection in which one term or the other is used that a particular kind of road is intended." (*Mobile Light etc. Co.* v. *Mackay,* 158 Ala. 51, 48 South. 509; *Funk* v. *St. Paul City R. Co.,* 61 Minn. 435, 52 Am. St. Rep. 608, 29 L. R. A. 208, 63 N. W. 1099; *Philadelphia* v. *Philadelphia Traction Co.,* 206 Pa. 35, 55 Atl. 762; *Gyger* v. *Philadelphia City Pass. R. Co.,* 136 Pa. 96, 9 L. R. A. 369, 20 Atl. 399.) "The word 'railway' may include railroads operated by steam as well as those whose cars are propelled by some

other power, yet it is common knowledge that such corporations as belong to the latter class are usually operated as street railways for local convenience." (*Thompson-Houston Electric Co.* v. *Simon,* 20 Or. 60, 23 Am. St. Rep. 86, 10 L. R. A. 251, 25 Pac. 147.) "Laws relating to taxation of railroads should be construed to include street railroads. City passenger railroads are included in the name railroads." (*Hestonville etc. R. Co.* v. *City of Philadelphia,* 89 Pa. 210.) "The term 'railroad' as used in 'every railroad shall keep' person on locomotives on lookout ahead, includes railroad operating 'dummy' in the city exclusively engaged in carrying passengers." (*Katzenberger* v. *Lawo,* 90 Tenn. 235, 25 Am. St. Rep. 681, 13 L. R. A. 185, 16 S. W. 611.) "An Act providing for redress of injuries from neglect or misconduct of 'railroad companies' applies to proprietors of any kind of railroad, whether it is propelled by steam or horse-power on iron or any other kind of rails." (*Johnson* v. *Louisville City Ry. Co.,* 73 Ky. (10 Bush) 231.) "An Act to enable railroad corporations to borrow money, *etc.,* is sufficiently comprehensive to embrace horse railways." (*Chicago* v. *Evans,* 24 Ill. 52.) "The word 'railroad,' in its broadest signification, includes a street railroad. When the word is used in a statute, there is no definite rule of construction as to whether it includes street railroads. It may, or it may not, include them. The meaning of the word must depend upon the context and the general intent of the statute in which it is used." (*Bloxham* v. *Consumers' Electric Light & St. R. Co.,* 36 Fla. 519, 51 Am. St. Rep. 44, 29 L. R. A. 507, 18 South. 444.) But it has been held that when either of the words "railroad" or "railway" is used in a statutory or constitutional provision, and the context is without indication that a particular kind of road is intended, the provision will be held applicable to every species of road embraced in the general sense of the word used. (*Gyger* v. *Philadelphia City R. R. Co., supra.*) "The term 'railroad' includes street railroad in mechanic's lien statutes where the words used are 'any railroad.'" (*Egan* v. *Cheshire Street Ry.,* 78 Conn. 291, 61 Atl. 950.) "'Railroad' as used in the Code pro-

viding a penalty for obstructing a railroad includes a street railway operated by horse-power as well as a steam railroad." (*Price* v. *State,* 74 Ga. 378.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This cause was submitted to the district court upon an agreed statement of facts under the provisions of section 7254, Revised Codes, to have determined the question: "Has the city of Helena the right and power to require the plaintiff, the Helena Light and Railway Company, to light its railway tracks within the corporate limits of said city without cost or expense to the city, and particularly at street intersections?" The court upheld the contention of the city that it has the power and rendered judgment in its favor. The plaintiff has appealed.

The plaintiff is operating its railway under what is referred to in the briefs of counsel as the "Brill Franchise." It also supplies to itself and to the city and its inhabitants electricity for light and power purposes under a second franchise granted to it by the city. The ordinance granting the railway franchise contains this provision:

"Section 2. Rights Granted, Subject to What.—The right and privilege hereby granted is subject, except as herein otherwise provided, to the terms, restrictions and provisions contained in Article III, entitled 'Street Railroads,' on pages 323 to 331, inclusive, of the Revised Ordinances of 1897."

Section 19 of said Article 3, which was in force when the Brill franchise was granted, is as follows: "The city of Helena reserves the right, by resolution or order of the city council, to adopt such other or further regulations, rules or restrictions, with reference to, or for the management of, street railroads, or companies or corporations conducting street railroads within the city of Helena, as the council may from time to time deem proper; and all grants for street railroads shall be construed, taken and held to be subject to the right in this section reserved, whether so expressed in the grant or not."

Section 3259 of the Revised Codes declares: "The city or town council has power: * * * (12) To require the lighting of any railroad track or route within a city or town, the cars of which are propelled by steam or otherwise, and fix and determine the number, style and size of the lamp-posts, burners, lamps and all other fixtures and apparatus necessary for such lighting, and the points of location of the lamp-posts, and to require the construction of crossings on the line of any railroad track or route within the city or town, the cars of which are propelled by steam or otherwise where the said track intersects or crosses any street, alley or public highway, or runs along the same, and to fix and determine the size and kind of such crossings and the grades thereof, and in case the owner of such railroad fails to comply with such requirements, the council may cause the same to be done, and it may assess the expense thereof against such owner, and the same constitutes a lien on any property belonging to such owner within such city or town, and may be collected as other taxes."

The ordinance imposing upon the plaintiff the requirement in question is not incorporated in the agreed statement of facts. What its specific requirements are as to the number of lights required, their character, position, *etc.*, does not appear. This is not important, however, since the question presented is not whether the particular requirements of the ordinance are reasonable, but whether either under the reservation in the general ordinance, which must be read into the Brill franchise, or under the provision of the statute, the council may exact the requirement it has undertaken to make.

1. As to the reservation clause in the ordinance, it is contended that, though the plaintiff by accepting the franchise entered into a contract with the city whereby it bound itself to observe any condition imposed upon it by the city, it did not thereby bind itself to submit to an exaction made of it, which, but for the reservation, it would be wholly beyond the power of the city to make. It is also argued that the general reservation does not impose upon the plaintiff any other duty than

to submit to any reasonable regulation enacted by the city. We do not think the reservation enlarges in any degree the power of the city to enact suitable police regulations to control the construction and operation of railways upon its streets. Upon examination of it we find that it prescribes with great particularity the method to be pursued in constructing them, the character of materials to be used, the grade upon which they shall be laid (on a level with the surface of the street), the portion of the street they shall occupy, the maximum rate of speed at which the cars shall be moved, the points at which the cars must be stopped to receive and discharge passengers, and the duty of the corporation or other person owning the railroad to make the necessary repairs to the tracks and to keep the portion of the street occupied by them planked or paved, as the necessities of the case from time to time require. It imposes the duty of keeping the cars clean and in good repair. It prohibits the carrying of freight. It defines the relative rights of the city and the owners of the railroads, when it becomes necessary to make repairs upon the streets. It reserves the right in the city to require the use by one owner of a single track in common with the owner of another railroad at points where the width of the street does not permit the laying of two tracks. It contains many other provisions guarding the comfort, convenience and safety of the public while traveling on the cars or upon the streets, and declares any violation, by omission or commission, of any of the provisions contained in it a misdemeanor, subjecting the offender to the penalty of a fine. If the owner of a railroad fails to comply with any of its requirements, its franchise may be forfeited. In short, the ordinance is nothing more nor less than a series of police regulations designed to control the operation of the railroad, and thus afford reasonable protection to the public in the use of the streets.

The source of the police power of a municipality is the state. [1] The extent of it must be ascertained from the law creating the municipality, and from the laws of the state bearing upon the same subject. The power cannot be surrendered, alienated

or abridged by contract, nor can it be delegated even with the consent of the legislature. Its exercise is a governmental function. Without it neither the state nor the municipality could protect the public welfare. (*Northern Pac. Ry. Co.* v. *Minnesota,* 208 U. S. 583, 52 L. Ed. 630, 28 Sup. Ct. Rep. 341; Dillon on Municipal Corporations, sec. 1269; McQuillin on Municipal Corporations, sec. 890.) By parity of reasoning, since the state is the source of this power, it is obvious that it cannot be enlarged or extended by contract or agreement with a private citizen or subject. To assert the contrary is to assert the proposition that a private citizen may by agreement clothe the municipality with a power which the state alone could grant. Therefore, [2] the general expression "such other and further regulations, rules or restrictions," *etc.,* found in the ordinance, must, we think, be taken to refer to, and include only, regulations of the same character as these prescribed in the preceding sections, *viz.,* police regulations. A familiar rule of statutory interpretation is that, where general words follow particular and specific words, the former must be held to mean things of the same kind. (Sutherland on Statutory Construction, sec. 268.) It is true that the particular provisions found in the ordinance preceding the section containing the reservation embody separate and distinct regulations applicable to the subjects with which they deal, yet they all fall under the head of "police regulations," and the principle embodied in the rule, it would seem, should be applied as well to the ordinance as to a statute in which the enumeration of specific things followed by general words is all embodied in a single section. To broaden the meaning of the expression so far as to make it include regulations pertaining to subjects wholly beyond the purview of its police power would be to hold that the city may exact of the plaintiff submission to any sort of burden or imposition which the council might deem it expedient to impose, including, for instance, a requirement that the plaintiff, besides lighting its tracks upon the streets upon which they lie, shall also pave and keep in repair throughout their entire length those portions

of the same streets. It cannot be questioned that such a requirement would not be within the lawful exercise of the police power. It would simply be an imposition upon the plaintiff of a duty which rests exclusively upon the municipality itself. In accepting the franchise from the city, the plaintiff impliedly agreed to become subject to any reasonable police regulation which was in force at the time, as well as to any that might thereafter be enacted. It did not require an express agreement on this subject to enable the city to exact compliance of the plaintiff. (Dillon on Municipal Corporations, sec. 1269.) That the city might by an express agreement incorporated in the grant have exacted plaintiff's consent to submit to any imposition which it chose to impose upon it we do not doubt. The plaintiff was not obliged to accept the franchise. It took it with whatever burden was attached to it. We do not think, however, that, in the absence of a specific agreement to that effect, the city has the right to impose upon it any burden other than such as it might impose upon any other person in the same position.

2. This brings us to the real question at issue; that is to say: Does the provision of the statute, *supra,* vest in the city the power to make the requirement in question? The rule is [3] established in this jurisdiction that a municipality has only such powers as are expressly conferred by the law creating it, and such as are necessarily implied and are indispensable in order to accomplish the purpose of its creation; and, when there is a fair and reasonable doubt as to the existence of the particular power, it must be resolved against the municipality and the power denied. (*State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695; *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249.) The reason of the rule is that the state has granted in clear and unmistakable terms all that it intended to grant at all. (*Id.*)

The provisions of the statute are not explicit. It is argued that the terms in which it is couched are broad enough to include any road constructed of rails. Whether it was intended

by the legislature to put street railroads in the same class with commercial railroads and make them subject to the same regulations by the municipality is left in doubt. To ascertain its intention, reference must be had to the context in which the provision is found, other provisions pertaining to the same subject, the occasion and necessity calling for the enactment of it, and the remedy had in view.

Section 3259 is an enumeration of the powers of a city council. It confers the power to pass all by-laws, ordinances and resolutions not repugnant to the federal or state Constitution or the Title relating to the government of cities, which may be necessary to carry out the provisions of the Title. (Subdivision 1.) By specific provisions embodied in eighty-one other subdivisions it grants many of the powers included in subdivision 1, besides others not clearly included. Some of them are cumulative in character, but most of them deal with specific subjects. Subdivisions 11, 12, 13 and 66 relate exclusively to railroads. Subdivision 11 grants the power "to regulate and control the laying of railroad tracks and prohibits the use of engines and locomotives propelled by steam or otherwise, or to regulate the speed thereof when used." Subdivision 12 is quoted above. By subdivision 13 is granted the power "to license and authorize the construction and operation of street railroads and require them to conform to the grade of the street as the same are or may be established." Subdivision 66 confers the power to grant to street or other railroads rights of way through the streets or property of the city, to regulate the running and management of the cars, to compel repairs upon a street occupied by a railroad by the owner thereof, to regulate the speed of engines, and to require flagmen at crossings. This last subdivision in terms applies to both commercial and street railroads. We do not attach any significance to the use of the term "railroad" in these subdivisions. Similar provisions were first enacted by the territorial legislature in 1887. (Comp. Stats. 1887, Div. 5, sec. 325, subds. 14 [11], 15 [12], 16 [13].) They have been amended from time to time since, but not in any

particular indicating an intention to change or extend their application. (Laws 1893, p. 113, subds. 14 [11], 15 [12], 16 [13] ; Pol. Code 1895, sec. 4800, subds. 11–13; Laws 1897, p. 204, subds. 11–13.)  As originally enacted, subdivisions 11 and 12 applied only to railroads propelled by steam locomotives.  As they now stand, they include railroads upon which any kind of motive power is used, as is indicated by the expression "or otherwise," now found in subdivisions 11 and 12, but not in the Act of 1887. The terms "railroad" and "railway" were used in the original enactment as synonymous.  So they were used in the Act of 1893.  They have been used indiscriminately in the same sense in much of the legislation on the subject of railroads and railroad corporations as is pointed out in *Daly Bank & Trust Co.* v. *Great Falls St. Ry. Co.,* 32 Mont. 298, 80 Pac. 252.  In the popular sense they are synonymous.  As was said by the supreme court of California in *Ferguson* v. *Sherman,* 116 Cal. 169, 37 L. R. A. 622, 47 Pac. 1023: "We recognize that the word 'railroad' or 'railway,' as used in a law, is broad enough to include street railroads, and that many cases have arisen where the courts have held that the word does in its signification include such corporations; but, when all has been said, each case has been determined upon its own facts, having in view the circumstances of the case, the context, the presumed intention of the lawmakers, and the general policy of the particular state in regard to the matter, and therefore, while a large number of cases may be cited in which the courts have held that the statutes under consideration dealing with 'railroads' embraced in their provisions street railroads, an equal number could be instanced in which the courts have, under the facts of the case, narrowed and limited the application of the statute, and held that street railroads were not included.  It would be difficult, if not impossible, to formulate any rule to govern the determination.  In this state the difficulty is much relieved by the distinction which our Codes make between railroad corporations proper and street railroad corporations."

Much of our legislation on the subject of railroads and railroad corporations has no application to street railroads. This is made apparent by the discussion of the provisions which were construed in *Daly Bank & Trust Co.* v. *Great Falls St. Ry. Co., supra,* and, while the question now before us was not involved in that case, what is said on this subject and especially touching the provision now under consideration should be given weight in arriving at its meaning. It will be observed that the term "railroad" is employed in subdivisions 11 and 12 without qualification. Immediately afterward, in subdivision 13, the distinguishing prefix "street" is used. This same distinction is made in subdivision 66. It is found in sections relating to the assessment of railroads. (Rev. Codes, secs. 2528, 2529.) Again, in section 3808, enumerating the purposes for which corporations may be formed, the same distinction is observed. Yet again it is found in the recent Act of the legislature providing for the establishment of lighting districts in the business portions of cities and towns. (Laws 1911, p. 167.) The frequent use of this prefix indicates the intention of the legislature to maintain the distinction, and suggests that in construing enactments touching railroads they should not be held to apply to street railroads unless the intention that they shall so apply is apparent. The character of their construction, the mode of their operation, the comparatively limited sphere of their activities, distinguish them from the railroads of commerce. Their tracks must conform throughout to the grade of the streets. Their cars are comparatively small and light, and therefore are easily subject to control. They are moved one at a time, or in trains consisting of a single car and a trailer. They are easily operated by one or two men. They are also lighted, and their approach or presence is easily observable. Their rate of speed is low. The danger to operators and the public is, for these reasons, comparatively small. Generally, they may convey passengers only. The operation of commercial railroads requires the use of massive locomotives. They convey passengers as well as freight, often making use of composite

trains. Their trains are made up of many heavy cars which, with the massive locomotives drawing them, render them difficult to control. They extend for long distances. Freight trains cannot be lighted. The movements of all trains must be controlled by signals. Many men are required to operate them. The danger to the operators and the public is proportionately large. Hence, the greater necessity for precautions to protect against danger of accident, and to serve the convenience of the public. These and many other matters which might be mentioned serve to emphasize the distinctive difference in the two kinds of railroads and furnish support to the view that by the employment, in the statute, of the term "railroad" or "railway," without qualification, the legislature does not intend to include street railroads, unless the intention to do so is apparent from the general legislation on the subject, or such intention is apparent from the provisions of the particular statute. (33 Cyc. 34; 36 Cyc. 1348, 1349.)

We refer to a few cases which justify the foregoing statement. In Minnesota it is held that a statute declaring that railroad corporations shall be liable for damages sustained by an agent or servant of the corporation through the negligence of any other agent or servant is not applicable to street railroad corporations. (*Funk* v. *St. Paul City Ry. Co.,* 61 Minn. 435, 52 Am. St. Rep. 608, 29 L. R. A. 208, 63 N. W. 1099.) The supreme court of Oregon in *Thompson-Houston El. Co.* v. *Simon,* 20 Or. 60, 23 Am. St. Rep. 86, 10 L. R. A. 251, 25 Pac. 147, determined that a statute authorizing railroad corporations to acquire rights of way by condemnation does not include street railroad corporations. A like conclusion was reached by Judge Taft in *Byrne* v. *Kansas City, Ft. Scott & M. R. Co.,* 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693, as to the meaning of a section of the Code of Tennessee providing that every engine or train shall be brought to a full stop before crossing an intersecting railroad. It was held that the statute has no application to the crossing by a steam commercial railroad of a horse-car track. In *San Francisco & S. M. El. Ry. Co.* v. *Scott, Collector,*

*etc.,* 142 Cal. 222, 75 Pac. 575, the court had under consideration the provision of the Constitution of California, providing that the franchise, roadway, roadbed, *etc.,* of all railroads operating in more than one county shall be assessed by the state board of equalization at their actual cash value, and that the same shall be apportioned to the counties, cities and counties, and cities, towns, townships and districts in which such roads are located, in proportion to the number of miles of railway laid in such counties, cities, *etc.* The conclusion was reached that the provision has no application to a street railroad, though it is operated in more than one county. A provision of the Revised Codes (section 4295) declares that a judgment against a railroad corporation for injury to a person or property, for material furnished or work or labor done upon any property of a railroad corporation, shall be a lien within the county where it is recovered on the property of such corporation, and prior and superior to the lien of any mortgage or trust deed provided for in the chapter of the Code of which it is a part. The application of this provision was considered by this court in *Daly Bank & Trust Co.* v. *Great Falls St. Ry. Co., supra.* The term "railroad" as used therein was held not to include street railroads. The same provision was examined and the same conclusion reached as to its application in *Massachusetts Trust Co.* v. *Hamilton,* 88 Fed. 588, 33 C. C. A. 46, and *Central Trust Co.* v. *Warren,* 121 Fed. 323, 58 C. C. A. 289. Many other cases could be cited, but these are sufficient for illustrative purposes.

When we come to analyze the provision of the statute itself, we find that one of the requirements authorized by it manifestly can have no reference to street railroads, *viz.:* "The construction of crossings on the line of the track or route within the city or town * * * where the said track intersects or crosses any street, alley or public highway, or runs along the same, and to fix and determine the size and kind of such crossings and the grades thereof." As already stated, street railroads must of necessity be, and they are, laid on the grade of the street.

Crossings, therefore, are entirely unnecessary; indeed, they would obstruct rather than add to the safety and convenience of travel along the streets either by foot-passengers or vehicles. Should it be held that the provision for lighting applies, but that the provision for crossings does not? We think not. Taking the subdivision as a whole, it confers in appropriate terms the power to prescribe two police regulations, both of which apply to commercial railroads entering or passing through a city or town, whereas one of them could not have any application to street railroads. When we come to examine subdivision 13, we find that it deals exclusively with street railroads, and that, taken in connection with the general provision contained in subdivision 1, it confers all the powers necessary for the policing of street railroads. We therefore conclude that the provision in [4] question was not intended to apply to street railroads at all. Hence the ordinance is void.

Counsel for the city insist that the ordinance making the requirement of plaintiff to light its tracks is authorized by the general provision found in subdivision 1. Let it be conceded that a city has the implied power to require a commercial railroad to light the streets on which its tracks lie; let it be conceded, also, that it has the implied power to require a street railroad to light its tracks at crossings which may be regarded as dangerous, or even at other points along the tracks exclusively for the convenience of the passengers; nevertheless we do not think that an ordinance under which the city may require the railroad to light the entire length of certain streets, without reference to special conditions rendering their lighting necessary, can be sustained under any view of its police power. The city cannot, under the guise of the exercise of this power, impose upon the railway company the duty which necessarily rests upon itself. (*City of Shelbyville* v. *Cleveland, C., C. & St. L. Ry. Co.,* 146 Ind. 66, 44 N. E. 929.)

The fact that the ordinance applies especially to street intersections does not render it free from objection. Under it the plaintiff is made subject to fine and forfeiture of its charter,

if it fails or refuses to install lights at any point or points designated, whether these be at street intersections or not. Nor do we think that the situation is affected by the fact that the plaintiff has a franchise under which it is furnishing electricity to the defendant and its inhabitants. So far as we can gather from the record, the two franchises have no relation to each other.

The judgment is reversed and the cause is remanded to the district court, with directions to enter judgment for plaintiff.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.