FRENCH, APPELLANT, v. COUNTY OF LEWIS AND CLARK, RESPONDENT.

(No. 6,628.)

(Submitted May 6, 1930. Decided May 29, 1930.)

[288 Pac. 455.]

450

*Mr. C. A. Spaulding*, for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Mr. George Padbury, Jr.,* and *Mr. A. P. Heywood,* for Respondent submitted a brief; *Mr. Heywood* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, George French, brought action against Lewis and Clark county for the recovery of $1,912, alleged to be due him for the construction of a county road. Defendant interposed a general demurrer to his complaint, which was sustained, and, plaintiff refusing to further plead, judgment of

dismissal was duly entered. From this judgment plaintiff has appealed.

For the purpose of determining the sufficiency of the complaint all facts alleged must be deemed true, and the only question for determination is whether or not, on those facts, liability on the part of the county is shown. Briefly stated, the facts as alleged are as follows:

The plaintiff is the owner of certain lands within the defendant county, situated along a creek bottom in a canyon having precipitous walls effectively barring livestock and rendering the land inclosable by a fence approximately 300 feet in length at each end of the land. Such a fence has been maintained thereon since 1868 and up to recent times, with gates therein for the accommodation of the public.

In 1903, on petition, the board of county commissioners of defendant county established a county road across plaintiff's land, but with the agreement that he should be permitted to maintain the fences as theretofore. This road was duly "surveyed, located, laid out, dedicated and established" but was not constructed, and the public was permitted to traverse plaintiff's land by divers routes and, in addition, though refusing to construct the road, the defendant by threats of criminal prosecution compelled plaintiff to remove his fences, thus abandoning his crops to the public at large and to roving livestock.

In 1926, faced with the alternative of abandoning his property, plaintiff himself constructed the road—this with "full knowledge" and acquiescence of the county, and immediately upon completing the road it was accepted by the county as a county road and thereafter the county "cared for and maintained it." Plaintiff expended $1,000 in construction and $456 in building a fence along one side of the road and will be required to expend a like amount in fencing the other side.

The complaint closes with the allegation that "plaintiff has repeatedly demanded as required by law that said defendant pay him the hereinbefore mentioned cost of construction of

said road and the fencing thereof, but to pay the same or any part thereof said defendant has repeatedly refused and does now refuse."

The law as it existed in 1903 and as it exists to-day (sec. 2631, Pol. Code 1895; sec. 1622, Rev. Codes 1921, as amended by Chap. 59, Laws of 1929) commands boards of county commissioners to "cause to be surveyed, viewed, laid out, recorded, opened, worked, and maintained such highways as are necessary for public convenience. * * * " The necessity for the highway in question was determined when the board allowed the petition therefor and established it, and that board is shown to have fully discharged its duties with reference thereto, except that it was not "opened" as required. Since its construction the county has "cared for and maintained" it as a county road; this allegation is equivalent to the statutory requirement "worked and maintained."

"All highways * * * laid out or erected by the public * * * are public highways" (Sec. 1612, Rev. Codes 1921). As the conjunction "or" is used, the highway described became a county road, or public highway, on being "laid out" whether "erected" or not.

The term "to lay out," when used with reference to highways, "has been from the earliest times, the appropriate expression for locating and establishing a new highway" (*Foster* v. *City of Boston Park Commrs.*, 133 Mass. 321; *Borrowdale* v. *Board of Commrs.*, 23 N. M. 1, L. R. A. 1917E, 456, 163 Pac. 721), and means the taking of all necessary legal steps for the establishment of, and looking toward, the construction of a highway, but does not include the actual physical act of construction (*Gaines* v. *Commissioners*, 37 N. J. L. 12; *Hough* v. *City of Bridgeport*, 57 Conn. 290, 18 Atl. 102; *Leahy* v. *Street Commrs. of City of Boston*, 209 Mass. 316, 95 N. E. 834; *Decker* v. *Washburn*, 8 Ind. App. 673, 35 N. E. 1111). When once "laid out" according to law, a highway does not become extinct through not being opened or used by the public. (*Bal-*

*timore & Ohio & C. R. Co.* v. *Town of Whiting*, 30 Ind. App. 182, 65 N. E. 759; *Clare* v. *Wogan*, 204 Iowa, 1021, 216 N. W. 739.)

It is apparent, then, from the allegations of the complaint that for many years a public highway existed over and across plaintiff's land, to his great damage, inasmuch as it was "opened" to the extent of requiring him to throw open his fences, but not opened in such manner as to confine travel to it. From the moment this road was laid out, the duty rested upon the county board to construct it either under contract, or otherwise, if in the judgment of the commissioners it could be constructed at less cost in some other manner. (Sec. 1645, Rev. Codes 1921.) The discretion thus vested in the board would have justified it in contracting with the plaintiff for the construction of the road, if, in the judgment of the members of the board, the plaintiff could have done the work on his own premises and at his leisure at a material saving to the county. This the board did not do, but, as alleged, "the county" had full knowledge that the plaintiff was proceeding to discharge the duty resting upon its managing officers and acquiesced in his so doing, and, "immediately" upon the completion of the road, accepted it as a county highway, and ever since has cared for and maintained it as such for the use of the traveling public.

These facts being admitted, for the purpose of the demurrer, liability exists under two principles of law which are well established.

A contract may be either express or implied (sec. 7514, Rev. Codes 1921), the latter being one the existence and terms of which are manifested by conduct (sec. 7516, Id.); but there is a third class of obligation, not properly a contract at all, but which, for lack of a better term, is referred to as a "quasi contract." "Contracts implied in law or more properly quasi or constructive contracts are a class of obligations which are imposed or created by law without regard to the assent of the party bound on the ground that

they are dictated by reason and justice and which are allowed to be enforced by an action *ex contractu.*" (13 C. J. 244.)

Under this doctrine, the first principle of liability applicable here is that "when the law imposes upon one an obligation to do something which he declines to do, and which must be done to meet some legal requirement, the law treats performance by another as performance for him, and implies a contract on his part to pay for it." (*Keith* v. *Bussigney,* 179 Mass. 255, 60 N. E. 614, 615) or, as stated somewhat differently, "when an obligation is imposed by law upon one to do an act because of an interest in the public to have it done, and that one fails to do it, he who does do it, expecting compensation, may recover therefor of him on whom the obligation is imposed." (*Mathie* v. *Hancock,* 78 Vt. 414, 63 Atl. 143, 144; *Highway Commrs.* v. *Bloomington,* 253 Ill. 164, Ann. Cas. 1913A, 471, 97 N. E. 280.)

The second principle of law applicable is that a contract to pay is presumed from the acceptance of beneficial labor, where the service was performed under circumstances which showed that the party for whom they were performed must have known that the services were performed for him, or for it, and not for another. (*Silver* v. *Missouri, K. & T. Ry. Co.,* 125 Mo. App. 402, 102 S. W. 621; *Suderman-Dolson Co.* v. *Hope,* (Tex. Civ. App.) 118 S. W. 216.)

Admitting the correctness of these principles counsel for defendant, without the citation of authorities, question their applicability to a public corporation or quasi corporation. This question is answered in 2 Dillon on Municipal Corporations, 5th ed., 1184, where it is said: "The present state of the authorities clearly justifies the opinion of Chancellor Kent, that corporations may be bound by implied contracts within the scope of their powers, to be deduced by inference from authorized corporate acts, without either a vote, a deed or writing. This doctrine is applicable equally to public and private corporations, but in applying it, however, care must be taken not to violate other principles of law." And again:

"A municipal corporation may ratify the unauthorized acts or contracts of its agents or officers, which are within the scope of the corporate powers, but not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all the material facts or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals." (Id., 1190.)

After a discussion of this subject, it is said in 3 Cal. Jur., at page 381: "So the view has prevailed that corporations, including municipal corporations, may be liable to actions of assumpsit upon implied contracts within the scope of their authority."

In *Wilcox* v. *Deer Lodge County*, 2 Mont. 574, it appears that a public highway had been constructed by private individuals and accepted by the county. Funds were raised by subscription for the work, but were not sufficient, and the legislature enacted a statute requiring the county to pay the balance. This Act was upheld upon the theory that the county, having received and accepted the benefit, should pay the reasonable value thereof.

In *Montgomery County* v. *Pruett*, 175 Ala. 391, 57 South. 823, 824, Pruett sued the county for labor and material furnished in constructing county roads. In passing upon the overruling of certain demurrers, the court said: "It is a mistake to suppose, as argued for the appellant, that a county may not be liable on an implied contract, although it is true that no contract can be implied against a county unless it is one which the county is by law empowered to make. And so, ratification of an unauthorized—if legally permissible—contract may be implied. * * * General assumpsit lies against a county within the range of its contractual powers, just as it does against an individual; * * * the plaintiff was required by the plea of the general issue either to prove an express contract with all the terms of which he had fully complied, * * * or else that he had furnished labor or

materials which were of benefit to the defendant, and which were voluntarily accepted by it."

In *Cass County* v. *Sarpy County*, 66 Neb. 473, 92 N. W. 635, 97 N. W. 352 (first appeal 63 Neb. 813, 89 N. W. 291), in so far as they affect the question before us, the fact conditions are similar to those in the case at bar. Cass county and Sarpy county are divided by the Platt River, which is spanned by a bridge forming part of a public highway; under such conditions the law of the state lays on each county the duty of maintaining the bridge, but provides that, if either neglect or refuse to enter into a joint contract for necessary work, the other may proceed and thereafter collect the one-half of the cost from the one failing to perform its duty. The bridge having fallen into a dangerous condition, Cass county proposed repairs, but Sarpy county refused to join. Thereafter Cass county proceeded to repair the bridge, but neglected to comply with the law requiring such contract to be let to the lowest bidder. In sustaining the right of recovery in Cass county, the court held that one who furnishes labor and materials for the creation of a public work, in good faith, but in the absence of a contract such as is required by statute, is entitled to recover their reasonable value in the absence of a statute expressly or by implication denying such right, citing *Clark* v. *Lancaster County*, 69 Neb. 717, 96 N. W. 593, allowing recovery by an individual on *quantum meruit* under similar circumstances.

Conceding all of the limitations on the rule contained in the authorities, under the facts alleged plaintiff had a cause of action for his labor and materials furnished in the construction of the road. Whether or not he may also recover the cost of fencing the road, we need not now decide, but see *Lewis and Clark County* v. *Nett*, 81 Mont. 261, 263 Pac. 418, and *Flynn* v. *Beaverhead County*, 54 Mont. 309, 170 Pac. 13.

Defendant asserts that the court's action in sustaining the demurrer was proper, as the complaint does not state that plaintiff presented a claim to the county auditor

or the board of county commissioners, which is an essential condition precedent to the maintenance of the action. The complaint, however, alleges that plaintiff has repeatedly demanded, "as required by law," that the defendant pay him for the work done and material used. If this allegation is true and the only method by which one may demand payment from a county is, as asserted, by the filing of a claim, the complaint alleges the ultimate fact and is sufficient in this respect. The nonpresentment of the claim, if in fact none was presented, is a matter of defense, to be determined by the trial court on full hearing of the controversy.

The complaint is sufficient to withstand the attack of a general demurrer.

The judgment is reversed and the cause remanded to the district court of Lewis and Clark county, with direction to overrule the demurrer.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, being absent, did not hear the argument and takes no part in the foregoing decision.