HEADLEY, Appellant, *v.* HAMMOND BUILDING, INC., ET AL., Respondents.

(No. 7,259.)

(Submitted May 7, 1934. Decided June 11, 1934.)

[33 Pac. (2d) 574.]

*Mr. H. Lowndes Maury* and *Mr. A. G. Shone,* for Appellant, submitted an original and a reply brief; *Mr. Maury* argued the cause orally.

*Mr. J. C. Garlington* and *Messrs. Murphy & Whitlock,* for Respondents, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action for damages for personal injuries alleged to have been sustained in a fall caused by defendants' alleged negligence in allowing a metal strip or cleat to project or protrude above the level of a temporary plank sidewalk along defendants' property in the city of Missoula. The trial of the case terminated upon the court's sustaining a motion for a directed verdict in favor of the defendants. Judgment was entered in accordance with the verdict. Motion for a new trial was made, submitted and denied. The appeal is from the judgment. The plaintiff assigns error on the part of the trial court in sustaining the motion for directed verdict.

The corporation defendant was the owner of a building known as the Hammond Block, located on Higgins Avenue, in the business section of Missoula. The individual defendants were the officers and directors of the defendant corporation. The Hammond Block was a four-story brick building with stone cornices. It was completely destroyed by fire in the month of October, 1932. The sidewalk on Higgins Avenue, the main-traveled street in Missoula, was constructed of concrete. In that portion of the sidewalk along the building were one

or more areaways, each containing a stairway. In this walk near the building was located, at various places, prismatic glass. Under at least a portion of the walk, and of the usual depth of the basement, was an excavation which, when the building was occupied, was used by at least one tenant for the storing of merchandise. During the progress of the fire, certain of the cornice stones fell on the sidewalk. Following the fire, the city authorities of Missoula, deeming that the walls remaining standing were dangerous and a menace to the safety of the people of the city, secured the services of a contractor to push over such portions of the walls. In these portions were similar stones, which fell upon the sidewalk. These falling stones broke holes through the sidewalk into the excavated area thereunder. The commissioner of public safety of the city of Missoula ordered the defendants to construct a temporary sidewalk to cover the holes made by the falling stones. A board fence was constructed along the side of the building, but out on the sidewalk a sufficient distance from the remaining walls of the building to exclude the public from that portion of the sidewalk containing the areaways and the prismatic glass. Adjacent to this fence a temporary plank sidewalk was constructed of boards approximately a foot wide and two inches thick, laid end to end lengthwise along the fence. The five feet, more or less, of concrete sidewalk between the temporary plank sidewalk and the curb were uninjured, and therefore not covered by a temporary walk.

The board sidewalk rested on supports underneath. After it was constructed, it was accepted and approved by the commissioner of public safety. This temporary sidewalk was constructed in November, 1932. Subsequent to its construction the defendant Pope caused sheet metal strips or cleats, approximately two inches in width, to be nailed across the planks at the points of union of the ends of the boards constituting the walk. These strips of metal, it was testified, were securely nailed to the boards comprising the walk. The city authorities did not order, direct or give permission to the adding of the metal strips to the walk, although the commissioner of public

safety knew of their existence, as did some of his employees. No objection was made by the city to their addition to the temporary walk. The defendant corporation paid the cost of these repairs. The site of the destroyed building and the subsidewalk excavation were not used for any purpose from the time of the fire until the erection of a new building long after the date of the accident here involved.

The plaintiff testified that on March 28, 1932, while she was walking along this sidewalk, the heel of her shoe caught on one of the metallic cleats projecting above the surface of the boards, and caused her to fall and to sustain the injuries of which she complains.

Mrs. Ruby Brome, a witness in behalf of the plaintiff, testified with reference to the condition of the metal strips on the walk as follows: "I could say that from the beginning of the walk to the end of the walk it was bent; some of them bent; some of them broke, and some of them slightly raised. This condition existed for several months before the 28th of March. At least after this sidewalk had been built and after the wear and tear of the many people who walk on that side of the street had taken place, that condition existed."

Many witnesses testified on behalf of the defendants, who directly and positively contradicted the testimony of Mrs. Brome in this respect. However, in considering the question before us, we are viewing the testimony in the light most favorable to the plaintiff, in accordance with the long-established rule of this court on the review of the ruling on a motion for a directed verdict.

This court, in the case of *Nord* v. *Butte Water Co.,* 96 Mont. 311, 30 Pac. (2d) 809, 811, said: "In this state the fee to the street is in the state; the city is but a trustee thereof (*City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 Pac. 593); a sidewalk is but a part of the street. (*Kipp* v. *Davis-Daly Copper Co.,* 41 Mont. 509, 110 Pac. 237, 21 Ann. Cas. 1372, 36 L. R. A. (n. s.) 666; *Mitchell* v. *Thomas,* 91 Mont. 370, 8 Pac. (2d) 639.) The city has the same control over, and duties with reference to, the sidewalk as it has respecting

any other part of the street. (6 McQuillin on Municipal Corporations, 2796.) Primarily the city is charged with the duty of keeping its streets, including the sidewalks, in a reasonably safe condition for travel. (*State ex rel. Rocky Mt. Bell Tel. Co.* v. *Red Lodge, Mayor*, 30 Mont. 338, 76 Pac. 758; *Cascade County* v. *City of Great Falls*, 18 Mont. 537, 46 Pac. 437; *Mullins* v. *City of Butte*, 93 Mont. 601, 20 Pac. (2d) 626.)"

The record is silent as to the provisions of the ordinances of the city of Missoula with reference to the construction of sidewalks by abutting owners. It does appear, however, that the owners in this instance were ordered by the city authorities ▮ to construct the sidewalk. If a city ordinance requires the abutting owner to keep the sidewalk in repair, the city's duty to the public is not affected; it merely makes the abutting owner a joint agent with the city officials for the performance of the city's duties. (*Nord* v. *Butte Water Co.*, supra; *Childers* v. *Deschamps*, 87 Mont. 505, 290 Pac. 261.)

Plaintiff urges that, because the defendants had under the ▮ sidewalk an excavation which, prior to the fire, had been in use for many years, they were in duty bound to keep the sidewalk over the excavation in repair, and that, as a result of their failure to keep the strips of metal in repair, they must respond in damages for injuries resulting from such failure. They seek to invoke the rule of the "coal-hole" cases. These cases arise where the abutting owner by affirmative act creates a dangerous condition in a street or sidewalk by making an excavation or opening therein, or by placing some obstruction thereon entirely foreign to its use as a sidewalk, as by a coal-hole, a meter-box, an open and unguarded areaway, a light-well, a sidewalk grating, an open manhole or cellar door, and permits these devices to become dangerous by failure to repair them. Our own cases of *Nord* v. *Butte Water Co.*, supra, and *Mitchell* v. *Thomas*, 91 Mont. 370, 8 Pac. (2d) 639, illustrate the application of this rule. Cases from many jurisdictions further illustrating the application of this rule are found in the note in 41 A. L. R. 212. The same doctrine has been applied to cases where prismatic glass

to supply light was placed in a sidewalk which was in a state of disrepair. (*Monsch* v. *Pellissier*, 187 Cal. 790, 204 Pac. 224; *Niehaus* v. *Caryfield*, 240 App. Div. 144, 269 N. Y. Supp. 335), although under like facts a contrary result was reached in the case of *Callaway* v. *Newman Merc. Co.*, 321 Mo. 766, 12 S. W. (2d) 491, 62 A. L. R. 1056.

In all these cases of the class under discussion—where the abutting owner has been held liable by reason of the use of the sidewalk—there existed in the sidewalk some contrivance which was foreign to the use of the walk by the public generally, and which was located there for the special benefit of the abutting owner. It will be borne in mind that the portion of the sidewalk containing the areaways and the prismatic glass in question was at the time of the accident excluded from use by the public by the board fence theretofore erected. In the portion of the walk open to the public and over which the plaintiff was traveling at the time she was injured, there was for the use of the defendants no device or contrivance foreign to its use as a sidewalk. The facts in this case are therefore clearly distinguishable from those in the so-called "coal-hole cases," and they are without application under the facts here present.

In the books are found cases where the abutting owner is held answerable in damages for failure to repair a sidewalk adjoining his premises, but an examination of these cases reveals that this conclusion is reached by reason of charter provisions expressly making him liable in such cases. The case of *Cummings* v. *Henninger*, 28 Ariz. 207, 236 Pac. 701, 41 A. L. R. 207, relied upon by plaintiff, is illustrative of this class of cases.

It is argued that the placing of these metal strips on the temporary sidewalk amounted to the placing of an obstruction in the street, and that therefore the defendants are liable. True, where an abutting owner places an obstruction in the street, he is liable to respond in damages for resulting injuries, not for the reason that he is an abutting owner, but for the

reason that he is the agency who places the obstruction on the highway. (Elliott on Roads & Streets, 4th ed., sec. 889.)

No one assumed to testify in this case that the metal strips, when first attached to the board walk, created a dangerous condition instanter. Mrs. Brome, who testified more favorably to plaintiff than anyone else appearing as a witness on the trial of this case, stated that the condition of which complaint was made arose only after use of the walk by the traveling public. We cannot, therefore, say that the defendants were liable to respond in damages on this theory. The evidence does not warrant this conclusion.

Defendant company, having once repaired the walk, was not therefore bound as a result of that operation to keep it in repair. (43 C. J. 1105; *Dixon* v. *Missouri Pac. R. Co.,* 104 Kan. 404, 179 Pac. 548; *McCarthy* v. *Adams,* 42 Ohio App. 455, 182 N. E. 324.)

Plaintiff insists that under the rule announced in *Smith* v. *Bonner,* 63 Mont. 571, 208 Pac. 603, she is entitled to recover. In that case the defendant constructed on her own property a cesspool which subsequently was embraced within a street. About six feet below the surface of the ground the cesspool was covered with boards, and the excavation above these boards was filled with earth to the level of the surrounding surface. A tree was planted over the cesspool by defendant, who continued to use the cesspool for about twenty years. Thereafter defendant constructed a new cesspool on her property adjacent to the street, and used the dirt excavated from the new one to fill the old. In the meantime the decaying boards over the old cesspool permitted the earth above to fall into the cavity below and thereby to leave the roots of the tree unsupported. Plaintiff in that case was injured by the falling of this tree during a storm. Two grounds of negligence were there alleged: (a) Having and maintaining a cesspool and tree in the condition described; and (b) negligently cutting the roots of the tree in digging the new cesspool. This court there determined that, if the plaintiff proved either one of the acts

of negligence alleged, he was entitled to recover. The judgment awarding a recovery was affirmed. The opinion does not disclose whether both allegations were sustained by the evidence, or, if both were not, which one was. This court then determined that a cause of action could be sustained on these allegations, and that the mere fact that the tree was in the street did not relieve the defendant from liability. Here the evidence fails to disclose any affirmative act on the part of the defendants other than the nailing of the strips on the board walk. Of that portion of the walk in question the defendants made no use which to them was of any special benefit.

The rule that an abutting owner is not liable for failure to keep the sidewalks in front of his premises in repair must prevail in the absence of facts bringing the case within the recognized exception as illustrated by cases involving coalholes, meter boxes and other devices of similar character located in the sidewalk. There having been no legal duty on the part of the defendants, as against plaintiff, to maintain the sidewalk in a good state of repair, the plaintiff cannot recover on the facts proved. The motion for a directed verdict was properly sustained.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.