BIDLINGMEYER, ᴇᴛ ᴀʟ., Aᴘᴘᴇʟʟᴀɴᴛꜱ, *v.* CITY OF DEER
LODGE, ᴇᴛ ᴀʟ., Rᴇꜱᴘᴏɴᴅᴇɴᴛꜱ.
No. 9290.
Submitted March 9, 1954. Decided July 1, 1954.
Rehearing Denied October 19, 1954.
274 Pac. (2d) 821.

294

Mr. P. E. Geagan and Mr. William N. Geagan, Butte for appellants.

Mr. Joseph A. McElwain, Deer Lodge, for respondents.

Mr. William N. Geagan and Mr. McElwain argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiffs, as taxpayers upon property situated in the city of Deer Lodge, brought this action to enjoin and restrain defendants from selling bonds, letting any contract, or doing any act necessary to making Main street in the city of Deer Lodge a part of "Federal Aid Highway" commonly known as U. S. highway No. 10 south.

A general demurrer to the complaint was sustained. Plaintiffs electing not to plead further, judgment in favor of defendants was entered from which plaintiffs have appealed.

Respondents on March 3, 1954, filed a motion to dismiss the appeal on the ground that no actual controversy now exists since every act and thing which plaintiffs sought to have enjoined has been fully and completely done and performed. The motion was supported by affidavit showing that bonds have been issued, a contract let for the making of the improvements and that the improvements have been made consisting of the asphaltic paving of Main street in the city of Deer Lodge.

Notwithstanding the fact that the work has been completed, plaintiffs contend that other issues remain in the case. They contend that there remains the question of whether the demurrer

was properly sustained in view of the allegations pertaining to the legality of the assessments to pay for the improvements, and in view of the allegations made with respect to an alleged unauthorized attempt by the city to relinquish and abandon its governmental powers and duties with respect to its streets.

The complaint alleges that taxes and assessments levied upon and against property of plaintiffs are illegal and unlawful and violative of Article XII, sec. 11, of our Constitution, in that there is double taxation because the property included in special improvement districts No. 90 and No. 92 is also included in district No. 91. There are no fact allegations in the complaint showing or tending to show that the assessments are illegal or unlawful unless the claim of double taxation has merit.

The record shows that special improvement district No. 90 included all the property abutting on a portion of Main street and district No. 92 included all the property abutting on the remaining portion of Main street. Improvement district No. 91 included all the property in the city of Deer Lodge exclusive of streets, avenues, alleys and public places, and including that in districts Nos. 90 and 92. The resolutions creating the districts point out that the estimated cost of the entire improvement of Main street including the intersections would be $177,450, of which the Federal Government's bureau of public roads and the state of Montana highway commission would assume the sum of $129,500, leaving the balance of $47,950 to be borne by the improvement districts. Of that amount district No. 90 was to furnish $25,000, No. 92 $1,500, and No. 91 $21,450. District No. 91 was created as a means of raising revenue for the purpose of paying for the improvements at the intersections and was authorized by R. C. M. 1947, sec. 11-2205. Assessments in districts Nos. 90 and 92 were based upon the lineal feet bordering on the street in question under R. C. M. 1947, sec. 11-2214. The assessments were for different purposes and in no sense was there double taxation. One assessment was to raise money to defray the cost of the intersections and the other to defray the cost of the street where it abuts on privately owned property.

Likewise, though the point is unimportant here, this court has repeatedly held that section 11 of Article XII of our Constitution has no application to special assessments. Billings Sugar Co. v. Fish, 40 Mont. 256, 106 Pac. 565, 26 L. R. A., N. S., 973; In re Valley Center Drain District, 64 Mont. 545, 211 Pac. 218; Walden v. Bitter Root Irrigation District, 68 Mont. 281, 217 Pac. 646; Thaanum v. Bynum Irrigation District, 72 Mont. 221, 232 Pac. 528.

Hence even though there were lack of uniformity of assessment (which the record does not show), it would be of no avail to plaintiffs in support of their contention that section 11 of Article XII, Montana Constitution, is violated.

Does the complaint state facts sufficient to show that there has been an unauthorized abandonment by the city of its powers and duties with respect to the regulation of Main street?

The complaint alleges that defendants, in order to have Main street paved, adopted resolution No. 483 on May 2, 1949, the important parts of which read: ''2. That it will not pass any ordinances or laws fixing a speed limit on the above mentioned street of under 25 miles per hour. 3. That it will not allow the erection of signs, semaphores or signals that will give preference to local routes which intersect with said above mentioned street with the exception of necessary traffic lights. 4. That it will require stopping of traffic at all intersections, streets and alleys before entering the above mentioned street, with the exception of those intersecting streets where traffic is regulated by traffic lights and when traffic lights are in operation. 5. That it will modify its City Ordinance to require parallel parking on the above mentioned street. 6. That it will require that all opening of the pavement be done under direct supervision of the State Highway Department to their complete satisfaction and that no opening of the pavement is to be done without prior authorization from the State Highway Department and upon posting an approved bond in an amount of one thousand dollars ($1,-000 00).''

The complaint then alleges that the resolution is an unauthor-

ized attempt to relinquish the city's powers and duties over and upon Main street. It alleges that the resolution would prevent the city from slowing or stopping traffic along Main street for the benefit, safety and protection of school children or other pedestrains by creating, establishing or marking a safety zone or "through street" intersecting and crossing Main street. Other like allegations are made as to the effect of the resolution in question.

The general rule is that the police power of a municipal corporation cannot be divested by contract or otherwise. 37 Am. Jur., Municipal Corporations, sec. 276, p. 901. And generally speaking, it cannot be surrendered or delegated. Helena Light & Ry. Co. v. City of Helena, 47 Mont. 18, 130 Pac. 446. The source of the police power of municipalities is the state. 37 Am. Jur., Municipal Corporations, sec. 277, p. 902; Carey v. Guest, 78 Mont. 415, 258 Pac. 236; Helena Light & Ry. Co. v. City of Helena, supra. The state, having delegated authority over the city streets to the cities, R. C. M. 1947, secs. 11-912, 11-1002, the latter have exclusive control over them (Carey v. Guest, supra), but the state may take away or revoke a part or all of the authority which it has delegated to the cities.

"A municipality, in exercising the police power granted to it by the legislature, acts as the agent of the state, and the legislature may at any time change its agent, and by another statute provide that a power previously exercised by the municipality shall be exercised by some other agency." 37 Am. Jur., Municipal Corporations, sec. 279, p. 907.

And in 25 Am. Jur., Highways, sec. 254, p. 545, it is said: "Subject to constitutional limitations, the state has absolute control of the highways, including streets, within its borders, even though the fee is in the municipality. Such power of supervision and control may be exercised directly by the legislature or may be delegated by it to subordinate or local governmental agencies, such as municipalities and quasi municipalities, or to park commissioners, police boards, or such other

authorities as it deems fit, and any such delegation may be revoked or changed at will.''

This principle of law was succinctly declared under circumstances quite similar to those here in Cabell v. City of Cottage Grove, 170 Or. 256, 130 Pac. (2d) 1013, 1019, 144 A. L. R. 286, where the court, speaking through Mr. Justice Lusk, said: ''The argument on behalf of the commission, is that the legislature has paramount control over all the public highways of the state, including city streets and county roads; that the legislature may exercise that control or may delegate it and may recall a power once delegated; that the legislature has recalled from cities the control over city streets taken over by the commission pursuant to the provisions of the highway code and vested that control in the commission; and that such control includes the authority now in question. The power and authority of the legislature thus asserted, to delegate and recall control over public highways, are not and cannot be disputed. (Citing cases.)'' To the same general effect is Automatic Signal Advertising Co. v. Babcock, 166 Minn. 416, 208 N. W. 132, and see Tranter v. Allegheny County Authority, 316 Pa. 65, 173 A. 289.

We have held that city streets belong to the state and the city is but the trustee thereof. Headley v. Hammond Building, Inc., 97 Mont. 243, 33 Pac. (2d) 574, 93 A. L. R. 794; State ex rel. State Highway Commission v. District Court, 105 Mont. 44, 69 Pac. (2d) 112. And see Dietrich v. City of Deer Lodge, 124 Mont. 8, 218 Pac. (2d) 708.

The resolution complained of here was adopted pursuant to the authority found in R. C. M. 1947, sec. 32-1609, reading: ''For and on behalf of the state of Montana, and in conformity with the requirement of section 1 of said act, the provisions of that certain act of congress approved July 11, 1916, known as the federal aid road act and entitled 'An act to provide that the United States shall aid the states in the construction of rural post roads, and for other purposes,' is hereby assented to. The state highway commission is hereby authorized to, for and on behalf of the state of Montana, enter into all contracts and agree-

ments with the United States government or any officer, department or bureau thereof, relative to the construction or maintenance of highways in the state of Montana; and the state highway commission for and on behalf of the state of Montana is hereby authorized to do all other things necessary or required to carry out fully the cooperation contemplated by the said act of congress as hereby assented to, relative to the construction and maintenance of roads and highways in the state of Montana.''

If in the adoption of resolution 483 some of the police power ▮ of the city was surrendered, the foregoing authorities sustain the right to do so where the state authorizes the highway commission to enter into all contracts and agreements with the United States government relative to the construction and maintenance of highways, and where the commission assents to the conditions prescribed by the federal works agency for the right of the state to participate in federal aid. The same reasoning sustains the right to require parallel parking.

Allegations have been made in the complaint in the nature of conclusions as to what effect the resolution will have. It is alleged in substance that the effect of the ordinance is to prevent the city from slowing traffic to less than 25 miles per hour and that it is prevented from protecting school children and others by establishing a ''through street,'' intersecting and crossing Main street.

The resolution fairly interpreted does not have this effect. It is true that it cannot pass an ordinance fixing the speed limit under 25 miles per hour, but it might achieve practically the same purpose by providing traffic lights. It may provide a safe means for school children and others to pass at intersections, but in order to do so, it must provide and keep traffic lights in operation. It is the wording of the resolution that controls rather than the allegations of its effect when the wording does not justify the conclusion asserted in the allegations.

''Where a written instrument is set out in haec verba, the ▮ terms of the instrument as so set forth control general allegations as to its legal effect.'' 71 C. J. S., Pleading, sec. 56,

pp. 143, 144. To the same effect are 41 Am. Jur., Pleading, sec. 57, p. 328; Andersen v. Turpin, 172 Or. 420, 142 Pac. (2d) 999, and note in 16 Ann. Cas. 490.

The resolution does not surrender the police power of the city ██ but merely places a limitation upon the method and means by which it may be exercised.

It is claimed that resolution No. 483 is improper in that it ██ requires the placing of a bond and requires approval of the Montana highway commission before opening the pavement no matter how urgent the necessity for so doing. Since the highways belong to the state it is not an unlawful requirement that the Montana highway commission be consulted before opening the pavement. Likewise the placing of a bond is a reasonable requirement.

The court did not err in sustaining the demurrer to the complaint and in entering judgment for defendants. The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE ANDERSON, Concur.

MR. JUSTICE BOTTOMLY:
I dissent.

MR. JUSTICE FREEBOURN: (dissenting).

I dissent for the following reasons:

The question to be answered by this court is: Does or does not the complaint state facts sufficient to constitute a cause of action?

In determining whether or not the complaint states facts sufficient to constitute a cause of action as against the demurrer, every material allegation of fact well pleaded is deemed true. Mills v. Pope, 90 Mont. 569, 4 Pac. (2d) 485; Toomey v. Penwell, 76 Mont. 166, 245 Pac. 943, 45 A. L. R. 993. For the purpose of determining the sufficiency of a complaint, attacked by a general demurrer, "all facts alleged must be deemed true". French v. Lewis & Clark County, 87 Mont. 448, 288 Pac. 455, 456.

However, respondents by a motion to dismiss plaintiffs' appeal, contend this court should not pass upon the sufficiency of the complaint herein because it is asserted that no actual controversy now exists between the parties hereto since "every act and thing which plaintiffs sought to enjoin defendants from performing during the pendency of this action has been fully and completely done and performed."

It being made to appear from the affidavit of the chief state highway engineer that the actual work consisting "of the asphaltic paving of Main Street in the City of Deer Lodge * * * between the south city limits and Conley Avenue and extending 0.743 miles northerly along Main Street to survey station 3927.7, between Cottonwood Avenue and California Avenue * * * was completed July 31, 1953," before the appeal and motion to dismiss such appeal were argued in this court on March 9, 1954.

Notwithstanding that the actual work of paving Main street as shown by such affidavit, was all done "last fall," there are issues as shown by the allegations of the complaint which are vital, alive and by no means moot.

It appears from the well pled allegations of the complaint that real properties of the plaintiffs have been wrongfully and illegally levied upon, assessed and taxed, and doubly so, in order to pay for such paving of Main street, and that such taxes are a lien on their property and are not uniform, thereby violating Article XII, sec. 11, of the Montana Constitution which provides: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The issue of such taxes as raised by the complaint makes such complaint good as against defendants' demurrer, and after issue joined, should be tried in the lower court for, notwithstanding defendants make it appear that all such taxes so levied have been paid, plaintiffs assert that such taxes have not all been paid and that the taxes paid were paid under protest.

The complaint alleges, among other things: That the de-

fendants, in order to have Main street paved, on May 2, 1949, adopted and approved resolution No. 483, which provides in part as follows:

"2. That it [the defendants] will not pass any ordinances or laws fixing a speed limit on the above mentioned street of under 25 miles per hour.

"3. That it will not allow the erection of signs, semaphores or signals that will give preference to local routes which intersect with said above mentioned street with the exception of necessary traffic lights.

"4. That it will require stopping of traffic at all intersections, streets and alleys before entering the above mentioned street, with the exceptions of those intersecting streets where traffic is regulated by traffic lights and when traffic lights are in operation.

"5. That it will modify its city ordinance to require parallel parking on the above mentioned street.

"6. That it will require that all opening of the pavement be done under direct supervision of the State Highway Department to their complete satisfaction and that no opening of the pavement is to be done without prior authorization from the State Highway Department and upon posting an approved bond in an amount of one thousand dollars ($1,000.00)."

The complaint further alleges: "That the aforesaid resolution No. 483 * * * is an unauthorized and unlawful attempt by the City Council of the City of Deer Lodge and its mayor, to relinquish, abandon and barter away for a proposed consideration of money and the doing of work, governmental powers, duties, rights, functions and obligations and also municipal functions and obligations and duties, over and upon, in and concerning Main street, one of the public streets and thoroughfares of and within said City of Deer Lodge * * * to two organizations, agencies * * * and concerns, which are not * * * any part or portion of the municipal government of the City of Deer Lodge.

"That such attempt * * * is contrary to the laws of the State of Montana, relating to the powers and duties of the City of

Deer Lodge, over, upon and in the streets and public ways of said city, in the control, care and management thereof for the peace, quiet, health, safety and public welfare of the citizens and residents of said City of Deer Lodge, and contrary to the Constitution of the State of Montana * * * and such is a deprivation of the rights of plaintiffs * * *; that people of said City of Deer Lodge live and keep their places of residence on both the east and west sides of said Main Street, and the inhabitants of said City of Deer Lodge and the general public cross said Main Street in going about their usual affairs and business * * *; that the inhabitants * * * exceed in number 3,500 persons. That the plans of the aforementioned conversion of said Main Street to a part of Federal Aid Highway, U. S. No. 10 South, do not provide for, contemplate or plan any bridge, overpass, underpass, safety zone, school zone, hospital zone or otherwise for use of either vehicle or pedestrian to cross said Main Street, except crossing it on grade over a road or highway which the city has attempted to abandon its right and duty to regulate the speed of traffic using the same to less than 25 miles per hour to the great danger of loss and injury of both life and property by inhabitants. * * *

"That * * * resolution 483 * * * would prevent the City Council of the said City of Deer Lodge from slowing or stopping vehicle traffic along Main Street for the benefit of, safety of, protection of, and right-of-way of the local school children while crossing said highway going to school and returning home, to provide for the protection and safety of aged, or other inhabitants of said City of Deer Lodge, by creating, establishing or marking a safety zone or 'through street,' intersecting and crossing said Main Street; that the entrance of inhabitants of said City of Deer Lodge, and the general public, into parked automobiles could not be safely accomplished from the side which is toward the center of the street, of parked vehicles along said Main Street; that even in case of an emergency affecting the public health, safety or morals, traffic passing on and along said Main Street could not be slowed, stopped or limited to a speed less

than twenty-five (25) miles per hour; that in case of emergency for the public health, safety, or morals, nor for any other reason whatsoever without the prior authorization and direct supervision of the Montana Highway Department, and its approving of a bond furnished for $1,000.00 could any opening of the pavement of said Main Street be accomplished, regardless of method, manner, condition or size or degree of said opening or the immediate necessity therefor; that said resolution 483 establishes and is a direct, open, unlawful and illegal encroachment upon the life, liberty and property of the plaintiffs and of the other inhabitants of said City of Deer Lodge, without due process of law, contrary to and in violation of the Constitution of the United States of America, Amendment XIV, section 1, and to the Constitution of the State of Montana, Article III, section 27, and that said resolution fails to give and secure, but relinquishes, abandons, and delegates the equal protection of the law to the plaintiffs and other inhabitants of said City of Deer Lodge, in violation of, and contrary to the Constitution of the United States of America, Amendment XIV, section 1; * * * that the defendants * * * threaten to, and will unless restrained * * * deprive these plaintiffs of their right to the safe and proper use of the public streets and highways of the City of Deer Lodge, as contemplated by the laws of the State of Montana; threaten to, and will continue to fail and refuse to give these the equal protection of the laws of the State of Montana * * *.''

Under R. C. M. 1947, city and town councils have the legislative-given power: ''To regulate and prohibit traffic * * * upon the streets'' sec. 11-911; ''To regulate or prohibit the fast driving of * * * vehicles within the city or town'' sec. 11-912; ''To provide for and regulate street crossings, curbs, and gutters'' sec. 11-910; and ''To permit the use of the streets and alleys of the city or town for the purpose of laying down gas, water, and other mains, but no excavations must be made for such purpose without the permission of the council or its authorized officer * * *.'' Sec. 11-975.

Things done under the powers above enumerated are for the

comfort, safety and welfare of the inhabitants of such municipalities, and fall within the police power thereof. A municipality cannot surrender, alienate, delegate, or barter away such police powers or functions.

"In the people of this state is lodged its police power, one of the highest attributes of sovereignty. The exercise of this power is deemed essential to the good order and general welfare of organized society * * *." Public Service Comm. v. City of Helena, 52 Mont. 527, 159 Pac. 24, 26.

"It is a well recognized function of the police power of municipal corporations to promote the public safety and to preserve the general welfare by regulating all things harmful to the comfort, safety, and welfare of their inhabitants, or that are harmful to the public interests." 62 C. J. S., Municipal Corporations, sec. 132, p. 277. Any attempt to barter or surrender such functions and powers is invalid. 62 C. J. S., Municipal Corporations, sec. 139, p. 282.

"Delegata potestas non est delegari [one agent cannot lawfully nominate or appoint another to perform the subject-matter of his agency—Broom] is a general maxim applicable with peculiar force to any form of sovereign power, and operates to prevent the governing body of a municipal corporation, intrusted by the state with the police power, from delegating its high functions to any other body or officers; it may be discharged or exercised only by those to whom the state commits it." 62 C. J. S., Municipal Corporations, sec. 154, p. 316.

"The general police power possessed by a municipal corporation is a continuing power, and is one of which a corporation cannot divest itself by contract or otherwise." 37 Am. Jur., Municipal Corporations, sec. 276, p. 901.

As said by this court in Helena Light & Ry. Co. v. City of Helena, 47 Mont. 18, 130 Pac. 446, 447 : "The source of the police power of a municipality is the state. The extent of it must be ascertained from the law creating the municipality, and from the laws of the state bearing upon the same subject. The power cannot be surrendered, alienated, or abridged by contract, nor

306

can it be delegated even with the consent of the Legislature. Its exercise is a governmental function. Without it neither the state nor the municipality could protect the public welfare. Northern Pac. Ry. Co. v. [State of] Minnesota, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630; Dillon on Municipal Corporations, sec. 1269; McQuillin on Municipal Corporations, sec. 890.''

It is clear that the complaint herein stated facts sufficient to constitute a cause of action and was good as against the general demurrer.