FRED VAP ET AL., APPELLEES, V. CITY OF McCOOK, A MUNICIPAL CORPORATION, ET AL., APPELLANTS, STATE OF NEBRASKA, DEPARTMENT OF ROADS, INTERVENER-APPELLANT.

136 N. W. 2d 220

Filed July 2, 1965. No. 35902.

Russell & Colfer and Cline, Williams, Wright, Johnson, Oldfather & Thompson, for appellants.

Marti, O'Gara, Dalton & Bruckner, for appellees.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Warren D. Lichty, Jr., for intervener-appellant.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

The plaintiffs, Fred Vap, Ralph Miller, and others, all residents and taxpayers of the City of McCook, brought this action in the district court for Red Willow County. Its purpose was to enjoin the defendants, City of McCook, its mayor, and council, from carrying out the provisions of two contracts entered into April 9, 1963, between the

City of McCook and the State of Nebraska, Department of Roads, and to declare null and void the provisions thereof prohibiting parking on B Street. The contracts relate to U. S. Highways Nos. 6, 34, and 83 as they pass through that city on B Street. The State of Nebraska, Department of Roads, filed a petition in intervention opposing the plaintiffs' action.

The trial court found that provisions in each of the contracts which provided that the city would prohibit parking on B Street were illegal, null, and void. It entered judgment permanently enjoining the city from enforcing the particular no-parking provisions.

Motions for new trial of the defendants and intervener respectively being overruled, they both bring the matter to this court by appeal.

The parties will be designated as they were in the trial court except when the defendants and intervener are both referred to when they will be designated as appellants.

The alleged errors complained of by the appellants which are determinative of the cause before us are that the trial court erred in finding that the City of McCook had no power to enter into contracts to prohibit parking on the streets in question or that the contracts because thereof were void, and that the judgment of the trial court was for that reason contrary to the law and the evidence.

We sustain the assignments.

There is little dispute as to the facts herein. U. S. Highways Nos. 6 and 34 pass entirely through McCook from the east to the west on B Street which appears to be the city's principal business street. U. S. Highway No. 83 extends in a general north-south direction. It, however, intersects U. S. Highways Nos. 6 and 34 at East Sixth and B Streets where it turns west and continues on B Street to and beyond the western city limits. These numbered highways are all a part of the state

highway system. All traffic on these highways travel upon B Street and no by-pass has been provided.

Traffic on B Street is shown to be heavy. Traffic counts had been made in 1960 and 1961. Towards the center of the city the average count per day was from 6,900 to 8,250 vehicles. Proceeding westward the count diminished by stages to 2,560 vehicles on the west city limits and to the east city limits it was 2,275.

B Street as it runs through McCook before the contemplated improvement is 47 feet wide in places and in other portions 40 feet, measured from the back of the curb of the paving on each side of the street.

There has been considerable traffic congestion on B Street. This has been increased by parallel parking which has prevailed in the past. Vehicles backing into and moving out of parking spaces have held up traffic. The drivers of cars which were parked have had difficulty in driving out of the parking spaces because of the traffic. Drainage problems have arisen on B Street. Water stands in pools on portions of the street after rains, and in winter ice forms thereon causing hazardous driving and deterioration of the paving.

Meantime, the Department of Roads in conjunction with the federal government had made plans for widening B Street. The plans were in connection with the extensive rebuilding of U. S. Highways Nos. 6 and 34 approaching and passing through McCook. They involve changing the grades on B Street and making provisions for drainage. Changes in the grade of cross-streets at intersections are required. The moving of water service lines and fire hydrants are required, many of which changes have already been made at great expense by the city.

Negotiations ensued between the Department of Roads and the mayor and city council of McCook, and the contracts in question between the city and the department were agreed upon, duly authorized, and entered

into. Both contracts were executed by the city on April 9, 1963, and by the state on April 17, 1963.

The contract marked as exhibit 1-A involves project Nos. U-68(17) and U-68(18), providing for the improvement of B Street from West Tenth Street to West Fifth Street, and from East Fifth Street eastward to the city limits. The city agrees to be obligated for $80,000, the balance to be borne by the state and federal governments. They have allocated more than $60,000 therefor. The contract set out at exhibit 1-B concerns project No. U-68(23), which involves new construction from West Tenth Street to the western city limits. The whole expense of this is to be borne by the state and federal governments which have allocated over $160,000 therefor. The projects connect with other improvements to the same highways leading to McCook from the east and west for which considerably more than $1,000,000 has been allocated by the state and federal governments. No widening or other improvements are presently contemplated between West Fifth Street and East Fifth Street, a distance of 10 blocks, and in this area the street will continue to be 47 feet wide in places and elsewhere 40 feet in width.

Both contracts contained a provision by which the city agreed to prohibit parking on B Street to be effective immediately upon completion of the work. Expert witnesses from the Department of Roads testified this was necessary because four 12-foot traffic lanes were to be built, two going each way separated by a median; that the present and projected future traffic required such construction; that the width of the right-of-way would not permit parking in addition to the contemplated construction even after widening the street; and that unless parking is prohibited it will result in traffic being funneled into a bottleneck.

The witnesses for the plaintiffs were generally owners of land fronting on B Street or persons engaged in business enterprises thereon. They testified at consider-

able length to the effect that their property would depreciate in value and their profits from their businesses would be lessened if parking were prohibited on B Street.

The trial court found the mayor and city council of the City of McCook did not have the right or power to enter into contracts insofar as the contracts attempt to regulate parking on the streets in the city by contract. It was for this reason the defendants were permanently enjoined from carrying out the particular provisions of the contracts prohibiting parking on B Street.

It is conceded by all parties that authority is given to cities of the first class under sections 16-609 and 16-610, R. R. S. 1943, together with sections 19-2301 to 19-2304, R. R. S. 1943, to regulate parking of vehicles on the streets of the city and that under these provisions the power is exercised by ordinance.

The plaintiffs, however, maintain and the trial court evidently concurred in their contention that by contracting to prohibit parking on B Street the city has bartered away its police power to regulate parking in the future. They assert the city's attempt to so do is contrary to public policy, illegal, and void. They contend a municipality has no power to enter into contracts which curtail or prohibit the free exercise of its legislative power and such contracts are void, citing City of Nebraska City v. Nebraska City Speed & Fair Assn., 107 Neb. 576, 186 N. W. 374. There this court held: "A city cannot by lease, estoppel, or otherwise, grant to any person or association the use and control of such part of its public park as to practically deprive the public continuously of its enjoyment, nor delegate the use and control thereof to private individuals or associations. * * * A city may be estopped from denying the validity of a contract, irregularly made by it, with reference to matters concerning its business of a proprietary character, when it has received benefits from such contract, if it had authority to make such contract in the first

instance. But a city cannot be estopped from denying the validity of a contract which it had no authority to make." It is to be noted in the cited case that an attempt was made to bargain away the rights of the public to private persons and further that it was done without legislative authority. We think the case is not applicable to the present one. Other cases cited on this proposition have been examined and are found equally inapplicable. Plaintiffs do refer to 10 McQuillin, Municipal Corporations (3d Ed.), § 29.101, p. 408, where the general rule is laid down that municipalities cannot make contracts which will embarrass or control them in performing their legislative powers or duties. No reference is there made with respect to special legislative authorization. We feel the text is speaking of a general rule in the absence of such specific authority. Indeed, in the footnotes to this section, authority is cited which qualifies the rule to the case where there is no specific authority. That the rule is different where legislation permits such contracts appears from the same work in Vol. 2, § 10.38, p. 668, where it is said in part: *"Unless authorized by statute or charter,* a municipal corporation, in its public character as an agent of the state, cannot surrender, by contract or otherwise, any of its legislative and governmental functions and powers, including a partial surrender of such powers. For instance, a municipal corporation cannot, by contract or otherwise, divest itself of its general police power or its delegated power of eminent domain or taxation, or to regulate rates of a public utility, *unless so authorized by statute or charter."* (Italics supplied.)

In the case before us the appellants call particular attention to sections 39-1306 and 39-1307, R. R. S. 1943, which read as follows: "Any political or governmental subdivision or any public corporation of this state shall have the authority to enter into contracts through or with the department to enable them to participate in all the benefits to be secured from federal aid funds, or

funds made available from the federal government to be used on roads and streets. The department may negotiate and enter into contracts with the federal government, or any of its constituted agencies, and take all steps and proceedings necessary in order to secure such benefits for such political or governmental subdivisions or public corporations." § 39-1306, R. R. S. 1943.

"The department, on behalf of the state, and any political or governmental subdivision or public corporation of this state shall have the authority to enter into agreements with each other respecting the planning, designating, financing, establishing, constructing, improving, maintaining, *using,* altering, relocating, *regulating,* or vacating of highways, roads, streets, or connecting links." § 39-1307, R. R. S. 1943. (Italics supplied.)

Appellants argue that these statutes clearly authorize the contracts in question, and that contracts with respect to "using" and "regulating" the highways, streets, or connecting links clearly embrace the regulation of parking.

The quoted sections are a part of Chapter 39, article 13, R. R. S. 1943. The Legislature in this article has provided a system of state highways. Section 39-1301, R. R. S. 1943, clearly shows the intention of the Legislature with respect thereto. It recognizes therein that such a system is of great importance to the people of the state. It asserts that adequate highways are essential to low-cost motor vehicle traffic and to protect the health and safety of the citizens. It states in part: "In designating the highway system of this state, as provided by the provisions of sections 39-1301 to 39-1362, the Legislature places a high degree of trust in the hands of those officials whose duty it shall be, within the limits of available funds, to plan, develop, construct, operate, maintain, and protect the highway facilities of this state, for present as well as for future uses. * * * The design, construction, maintenance, operation, and protection of adequate state highway facilities sufficient to meet the

present demands as well as future requirements will, of necessity, require careful organization, with lines of authority definitely fixed, and basic rules of procedure established by the Legislature." It thereafter designates the State Engineer and the Department of Roads, acting under his direction as custodian of the state highway system: "* * * with full authority in all departmental administrative details, in all matters of engineering design, and in all matters having to do with the construction, maintenance, operation, and protection of the state highway system." In section 39-1302, R. R. S. 1943, terms are defined, including the following: "(5) Connecting link shall mean the roads, streets, and highways designated as part of the state highway system and which are within the corporate limits of any city or village in this state; * * * (25) * * * The state highway system shall include, but not be limited to, rights-of-way, connecting links, drainage facilities, and the bridges, appurtenances, easements, and structures used in conjunction with such roads, streets, and highways; * * *." No contention is made by the plaintiffs that the Legislature did not give the complete administration of the state highway system under this article to the Department of Roads of the state.

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state." Lang v. Sanitary District, 160 Neb. 754, 71 N. W. 2d 608. "The state has inherent power to establish, maintain, and control the highways of the state, including those within corporate limits of municipalities. While the Legislature may properly delegate certain powers over streets, alleys, and highways to a municipality, it retains the power to legislate with reference thereto * * *, where a matter of

state-wide policy and concern are involved." Omaha Parking Authority v. City of Omaha, 163 Neb. 97, 77 N. W. 2d 862. Parking on the state highway system is a matter of statewide concern.

One has no legal right to appropriate a part of the street to the purpose of his private business or to be used as a part of or to improve and make more useful a facility used in the conduct of his business. Hillerege v. City of Scottsbluff, 164 Neb. 560, 578, 83 N. W. 2d 76. Parking in a city is a privilege and subject to regulation by proper authorities. 7 McQuillin, Municipal Corporations (3d Ed.), § 24.643, p. 688. This power to contract between the Department of Roads and political subdivisions appears necessary both in respect to the administration of the state highway system provided for in Chapter 39, article 13, R. R. S. 1943, and to assist in the procurement of federal funds by the subdivisions themselves as set out in section 39-1306, R. R. S. 1943.

We conclude under section 39-1307, R. R. S. 1943, the Legislature has expressly authorized and delegated to the Department of Roads on behalf of the state and any political or governmental subdivision of the state authority to enter into agreements with each other respecting the planning, designating, financing, establishing, constructing, improving, maintaining, using, altering, relocating, regulating, or vacating of highways, roads, streets, or connecting links. Further, that the words "using" and "regulating" as therein contained include the right to conclude agreements with respect to parking.

Cases are cited by the appellants where the courts of other states have upheld contracts of this nature between the state authorities and municipalities. Among them is Bidlingmeyer v. City of Deer Lodge, 128 Mont. 292, 274 P. 2d 821. In the cited case the city had by resolution, in order to secure federal funds, agreed among other things to require vehicles to stop at all intersections entering the street being improved and to modify its ordinances to require parallel parking on that

street. The Montana court there held: "Subject to constitutional limitations, the state has absolute control of the highways, including streets, within its borders, even though fee is in municipality, and such power of supervision and control may be exercised directly by legislature or may be delegated by it to subordinate or local governmental agencies, and any such delegation may be revoked or changed at will. * * * Even if municipality, in adopting a resolution agreeing to certain conditions so as to effectuate plan for making Main Street of municipality a part of a federal aid highway, surrendered some of city's police power, municipality had right to do so, in view of statute authorizing State Highway Commission to enter into contracts with United States Government relative to construction and maintenance of highways, and in view of Commission's assent to the conditions prescribed by federal works agency for the right of state to participate in federal aid. * * * Resolution adopted by municipality in order to comply with requirements relating to the making of municipality's Main Street a part of federal aid highway did not surrender police power of municipality, but merely placed limitation upon method or means by which such police power might be exercised." See, also, Farnsworth v. City of Roswell, 63 N. M. 195, 315 P. 2d 839, a case where the New Mexico court followed the case of Bidlingmeyer v. City of Deer Lodge, *supra*, holding: "A city had power to enter into a cooperative agreement with the state through its highway commission for improvement and widening of a portion of a state highway traversing the city by which the city would prohibit the parking of motor vehicles on the portion of the street highway to be improved, where by the ordinance, city was saved a large sum of money, which but for the opportunity, the city would have had to pay for the improvement, in its entirety."

The plaintiffs contend that in order for sections 39-1306 and 39-1307, R. R. S. 1943, to have the effect of permitting

a contract to be validly entered into between the city and the state through the Department of Roads in respect to parking, sections 16-609 and 16-610, R. R. S. 1943, giving the supervision and control of the streets to the mayor and city council had to be repealed or modified. It is sufficient to refute this contention to point out that Chapter 39, article 13, R. R. S. 1943, and the sections quoted therefrom were part of one act, Laws 1955, chapter 148, page 414, which does not purport to be amendatory of sections 16-609 or 16-610, R. R. S. 1943, but is original and independent legislation complete in itself. It is not therefore within the constitutional requirements concerning amendments although it may by implication modify or repeal prior acts or parts thereof. Omaha Parking Authority v. City of Omaha, *supra.*

Neither can it be inferred as the plaintiffs contend that parking is prohibited for all time. It is not to be supposed that if future conditions justify or require a change the state through the Department of Roads and the city would always remain adverse to joining in subsequent appropriate agreements. The state has placed trust and confidence in the department as well as the city to act in the best interest of the public. We conclude that the city may under section 39-1307, R. R. S. 1943, contract with the state through the Department of Roads to prohibit parking on a street which forms a connecting link on the state highway system. In so doing the police power of the city is not bartered away but only limited in its exercise as specifically authorized by law.

It follows that the trial court erred in holding the contract prohibiting parking was illegal and void, and its judgment is reversed and the cause remanded with directions to dismiss the plaintiffs' petition

REVERSED AND REMANDED WITH DIRECTIONS.